**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

**1:19-cv-00136-NDF**

_____

| | | |
|---|---|---|
| In re: | ) | |
|    DENNIS MEYER DANZIK, | ) | Appeal from the |
| | ) | US Bankruptcy Court for the |
| | ) | District of Wyoming |
| | ) | Case No.  19-20116 |
| Debtor. | ) | CHAPTER 11 |
| | ) | |
| _____) | ) | |
| | ) | |
| DENNIS MEYER DANZIK, | ) | |
| | ) | |
| | ) | |
| Appellant, | ) | |
|    v. | ) | |
| | ) | |
| CWT Canada II Limited Partnership and | ) | |
| Resource Corporation, | ) | |
| | ) | |
| Appellees. | ) | |

# APPELLANT'S OPENING BRIEF

Done this 16th day of September, 2019.

Respectfully submitted
For the Appellant

/s/ Ken McCartney
Ken McCartney Bar No. 5-1335
The La Offices of Ken McCartney P.C.
1401 Airport Parkway, Suite 200
PO Box 1364
Cheyenne, WY 82003
PHN (307) 635-0555
FAX (307) 635-0585
bnkrpcyrep@aol.com

## TABLE OF CONTENTS

I.      Table of Authorities                              **Page 3**

II.     Jurisdictional Statement                          **Page 4**

III.    Statement of Issues and Standard of Review        **Page 5**

IV.     Statement of the Case                             **Page 6**

V.      Summary of the Argument                           **Page 10**

VI.     Argument                                          **Page 11**

VII.    Conclusion                                        **Page 22**

VIII.   Certificate of Compliance                         **Page 23**

IX.     Statement of Related Cases                         **Page 23**

## I.     Table of Authorities

**Statutes:**

11 U.S.C. §707(a)

11 U.S.C. §707(b)

11 U.S.C. §§1129(a), 1225(a)(3), 1325(a)(3)

28 U.S.C. §158(a)(1), (b)(1), (c )(1).

**Rules:**

Fed. R. Bankr. P. 8013

Fed R. Bankr. P. 8015(a)(7)(B) or 8016(d)(2)

**Cases:**

*In re Hart*, 923 f.2d 1410, 1411 (10th Cir. 1991).

*Hall v. Vance,* 887 F.2d 1041, 1043(10th Cir. 1989).

*In re Uniol, Dalton Development Project #1 v. Unsecured Creditors Committee*, 948 F 2d 678, 681(10th Cir. 1991).

*In  re Branding Iron Motel, Inc.,* 798 F.2d 396, 399-400 (10th Cir. 1986).

*In re Reid*, 757 F. 2d 230, 233-234 (10th Cir. 1985).

*In re Mullet*, 817 F.2d 677, 678-679 (10th Cir. 1987).

*In re Bushyhead* 254 B.R. 136 (Bank. N.SD. Okla., 2015)

*In re Etcherverry* 242 B.R. (Colo Distr. Ct. Dec. 22, 1999)

*In re Hammonds*, 139 B.R. 535 (Bankr. D. Colo. 1992)

*In re Zick* 931 F. 2d 11244, 1126-27 (6th Cir. 1991)

*In re Tamecki,* 229 F.3d 205, 207 (3rd Cir. 2000)

*In re Huckfeldt,* 39 F.3d at 832. (Eighth Circ. 1994)

*In re Khan,* <u>172 B.R. 613</u>, 624-626 (Bankr.D.Minn.1994)

*In re Padilla,* 222 F.3d 184, (Ninth Circ. 2000)

*In re Baird*, 456 B.R. 112, (Bankr. M.D. Fla. 2010

*In re Piazaa* 719 F.3rd at 1253 (11 Cir., 2013)

*Kane & Kane,* 406 B.R. at 168

**Treatise:**

Katie Thein Kimlinger & William P. Wassweiler, <u>The Good Faith Fable of 11 U.S.C. §707(a): How Bankruptcy Courts Have Invented A Good Faith Filing Requirement for Chapter 7 Debtors</u>, 13 Bankr. Dev. J. 61 (1996);

6 Collier on Bankruptcy P707.32[2]

## II.    Jurisdictional Statement

When one or more of the parties to an appeal from the Wyoming Bankruptcy Court fails to consent to the appeal being heard by the Bankruptcy Appellate Panel, the appeal is considered by the United States District Court for the District of Wyoming. 28 U.S.C. §158(a)(1), (b)(1), (c)(1). On June 25th, 2019, the Appellant declined BAP consideration as is his right to do so. The Bankruptcy Appellate Panel for the 10th Circuit, therefore, signed an order thereafter transferring the appeal to the United States District Court for the District of Wyoming.  The order appealed must be a final order of the bankruptcy court, 28 U.S.C. §158(a)(1).  The order being considered here on a timely

notice of appeal is a final order by the bankruptcy court dismissing the chapter 11
proceeding.

### III.    Statement of Issues and Standard of Review

**Issues:**

1.  Did the Bankruptcy Court erred finding such bad faith or fault as to justify
    dismissal legally?

2.   Did the Bankruptcy court properly apply chapter 7 dismissal law?

3.  Did the bankruptcy court erred finding such bad faith or fault as to legally
    prejudice refiling for 180 days**?**

**Standard of Review:**

The bankruptcy court's findings of fact will not be disturbed unless they are
clearly erroneous.  Fed. R. Bankr. P, 8013. The bankruptcy court's conclusions of law,
however, may be reviewed *do novo*, *In re Hart*, 923 f.2d 1410, 1411 (10th Cir. 1991);
*Hall v. Vance,* 887 F.2d 1041, 1043(10th Cir. 1989).
The Tenth Circuit also stated the following regarding review of the bankruptcy
proceedings by the district court *in In re Uniol, Dalton Development Project #1 v.*
*Unsecured Creditors Committee*, 948 F 2d 678, 681(10th Cir. 1991):

> In reviewing the decision of the bankruptcy court, the district court is bound
> to accept the bankruptcy court's findings of fact unless they are clearly
> erroneous but may examine its conclusions of law *de novo.  In re Branding*
> *Iron Motel, Inc.,* 798 F.2d 396, 399-400 (10th Cir. 1986). A bankruptcy
> court's factual determination will not be disturbed on appeal absent "the

most cogent reasons appearing in the record." *In re Reid*, 757 F. 2d 230, 233-234 (10th Cir. 1985).

We likewise review the bankruptcy court's factual findings under the clearly erroneous standard, while its conclusions of law are reviewable *de novo. In re Mullet*, 817 F.2d 677, 678-679 (10th Cir. 1987).

## IV.   Statement of the Case

The plot line this case has followed would be to good for theater.  Maybe a miniseries with George Clooney playing the Debtor.

The  story begins in March of 2013, when a publicly traded Canadian company, Ridgeline Energy Services, Inc., a  publicly traded Canadian Corporation, which shortly thereafter changed its name to RDX Technologies, Corp. (RDX) operating through its CEO, Dennis Myer Danzik, the Debtor in this case, purchased from CWT Canada II Limited Partnership (CWT Canada) and Resource Recovery Corporations (RRC) (collectively the CWT Parties or CWT hereafter), Changing World Technologies, L.P. (CWT)  a holding company from the sole member of Renewable Environmental Solutions, LLC (RES), a Delaware limited liability company.  RES allegedly had developed a thermal de-polymerization technology to generate renewable diesel fuel oil from waste grease  at a refinery near Carthage, Missouri, located on land leased from Butterball, the turkey marketing company.  The facility was supposed to be able to "refine" waste protein into a fluid that closely resembled diesel fuel and be of a quality satisfactory for heating fuel.

There are allegations that the refinery never refined which are probably true.  The facility has been closed and abandoned after RDX gave up trying to make it work.

Litigation abounds.  The original sellers, the CWT Parties, were initially sued by investors in the refinery, GEM Holdco, LLC, a Delaware limited liability company, and GEM Ventures, Ltd., collectively GEM, alleging that GEM was beat out of the profits they were entitled to as partners in the refinery.  RDX and Danzik were joined in the New York action, brought by GEM to redress this injury, without considering the issue of venue or apparently jurisdiction consciously, and eventually RDX settled that claim for something like $2,000,000. Payment is disputed, however.  GEM now alleges that settlement was breached in a non-dischargeable fashion but has no holding to that effect.

The attorney who represented RDX and Danzik in the GEM defense was hired by the CWT Parties to sue Danzik and RDX in the same lawsuit, on crossclaims between once Defendants in the GEM case.  His firm's retention agreement with RDX and Danzik apparently allowed this unusual behavior by counsel.

The litigation did not go well for Mr. Danzik.  RDX's Chief Financial Officer quit about the time this case was developing and locked RDX out of its computers with unknown passwords.  Discovery was a complete disaster for RDX and Danzik.  The New York Court Judge lost patience quickly and sanctioned Danzik by vacating all his defenses and counterclaims resulting in a default judgment being entered.

Counsel for the CWT Parties quickly focused on a little over $3,000,000 in U.S. blenders' credits, paid by the Internal Revenue Service based on renewable diesel production, received by RDX during its short tenure as refinery operator.  The Unit

Purchase Agreement which served as the sale contract, calls for blenders' credits earned during the CWT Parties' period of operations to be turned over to the CWT Parties. The UPA also made paying CWT Parties unnecessary if the refinery did not refine, but that issue went the way of all other defenses in the New York litigation.

Originally the New York Court ordered Mr. Danzik to deposit the blenders' credits (a year and a half after RDX received and spent the funds) into an escrow for either the CWT Parties if they were lawfully earned or the IRS if not. Failing which there were contempt sanctions, a bench warrant, and eventually a judgment in the CWT Parties favor for the $9,023,534 which is the basis of the claim upon which Judge Parker granted summary judgment to the CWT Parties as non-dischargeable, in an adversary proceeding commenced during the second Chapter 11 filing, based on language in the various New York Court Orders describing RDX and Danzik as uncooperative discovery providers and later poor escrow depositors as they alleged no ability to deposit such sums.

It does not end there. The UPA called for Alberta, Canada, jurisdiction if it caused a dispute. CWT Parties are also Canadians. Long after his first Chapter 11, Danzik was able to partner RDX up with enough resources to commence a Canadian suit for its losses in the thirty-million-dollar refinery purchase. That case is pending and addresses the thirty-million-dollar purchase price for the failed refinery as well as significant liabilities caused by the refined product's various failures at customers locations.

Just as the underlying refinery sale has its drama, Mr. Danzik's efforts at holding onto bankruptcy protection have been met with challenges.

During his first Wyoming chapter 11 filing, Danzik took advantage of the preserved status quo to get organized to litigate. In addition to the four adversaries filed in his base case, there were state court filings. The Debtor was instrumental in finding RDX counsel to bring an action in Canada based on CWT Parties breach of the unit purchase agreement.  The agreement requires the parties to litigate in Canada.  And Canada does not recognize the *res judicata* effect of a default judgment, which means both sides of the story will be presented in that proceeding.  Discovery should be completed later this year.  It is expected that competent counsel will make a difference there.  That first chapter 11 case was dismissed for lack of reorganization progress, despite the litigation getting underway which is where the final solutions lie.

Mr. Danzik's second chapter 11 was more of a success than the case's dismissal would indicate.  The Debtor amazed a little over  $466,000 in his DIP checking account and another account he reported with the DIP Account that the Debtor called his Tax Account (he has large unpaid federal income taxes) during the short fifteen months that case was pending.  Within minutes of the second case being dismissed, the CWT Parties garnished the US Bank accounts containing these funds,  thus gaining exclusive control over the $466,000 in what were moments before DIP Accounts.  When Judge Parker declined to reconsider dismissal over conversion, the chapter 7 from which this appeal arises was filed.  If the dismissal is reversed, that garnishment will become an avoidable preference by a chapter 7 trustee.

Danzik approached chapter 7 well knowing he would be liquidated. (See Dismissal Transcript pages 42, 43).  His hope now, having given up on reorganizing, is to

be liquidated in a much more orderly fashion by a disinterested chapter 7 trustee than by self-serving creditors. That does not sound like it triggers a bad faith finding. Judge Parker and the Debtor disagree as to the extent a liquidation under chapter 7 will fund creditor payouts and that will be discussed at length below.

## V.       Summary of the Argument

Judge Parker's memorandum decision on appeal sounds overwhelmingly in a finding of "bad faith" hence dismissal.

The Debtor's first argument is that chapter 7 bankruptcies cannot legally be dismissed based on a finding of bad faith.  This argument should be reviewed *de novo* as it hinges on questions of law.  The Debtor will challenge the legality of a "dismissing a chapter 7 for "bad faith."  Judge Parker points out that the 10th Circuit has not come down squarely on that issue, but some credible appellate law in this circuit clearly holds that congress could have put bad faith into the Code originally or in two other amendments where it did so for chapter 11 and chapter 13, holding that not doing so is telling of the applicability of "bad faith"  having no bearing on chapter 7 dismissals.

The Debtor will argue in the alternative, that the lower court made many findings of fact that are manifestly errant.  This argument should result in a reversal only if this court finds the most cogent reasons appearing on the record.

The Debtor will argue that nothing about his efforts to obtain an orderly liquidation of assets by a chapter 7 bankruptcy trustee sounds in "bad faith." Neither did amassing $457,057.36 with which to pay creditors in the second chapter 11 sound in "bad

faith."  Bad faith would be characterized by the opposite of amassing and could have easily been the choice made.  It simply was not.

The lower court's "with prejudice" holding is based on the errant conclusion that the Debtor acted in this chapter 7 proceeding in bad faith and should not stand.

## VI.    Argument

Judge Parker was spot on at page 5 of 14 in her Memorandum decision when she pointed out that the Tenth Circuit has not addressed whether a court can dismiss a Chapter 7 case on bad faith grounds.  And that Bankruptcy courts within the Tenth Circuit and other Circuits have held "even though bad faith is not an enumerated factor constituting "cause" for dismissal under Section 707(a), evidence of a Debtor's "bad faith" in filing a chapter 7 case is cause for dismissal."  She could have also pointed out that a number of courts within the 10th Circuit have declined to dismiss chapter 7 proceedings on grounds of "bad faith." *In re Bushyhead* 524 B.R. 136 (Bankr. N.D. Okla. 2015*); In re Etcheverry*, 221 B.R. 524 (Bankr. D. Colo. 1988): both citing to three (3) circuits where three Circuit courts have decisions denying dismissal of chapter 7 cases on the grounds of "bad faith, the 8th, 9th and 11th.

These two cases deserve detailed examination.  *Etcheverry* is the more important of the two because it is a District Court of Colorado appellate ruling, holding that as a matter of law, chapter 7's cannot be dismissed for "bad faith."  This court reviews Judge Parker's holding that "bad faith," is grounds for dismissal *de novo*.

Considering the lower Court's holding that bad faith is not grounds for dismissal

of a chapter 7, the Colorado District Court Judge Wiley Y. Daniel at 242 B.R. 503,

*Shangraw v. Etcheverry*, (Colo. Dist. Ct Dec. 22, 199) takes apart "good faith" chapter 7

dismissal.  Counsel will quote extensively:

> "As a preliminary matter, it is important to note that commentators have
> questioned the ability of a bankruptcy court to dismiss a Chapter 7 case for lack of
> good faith.  See Katie Thein Kimlinger & William P. Wassweiler, <u>The Good Faith
> Fable of 11 U.S.C. §707(a): How Bankruptcy Courts Have Invented A Good Faith
> Filing Requirement for Chapter 7 Debtors</u>, 13 Bankr. Dev. J. 61 (1996); see also, 6
> Collier on Bankruptcy P707.32[2] ("The power to dismiss a chapter 7 case for lack
> of good faith, ***if it exists at all*** is extremely limited.")  (emphasis added).  While
> the Bankruptcy Code explicitly imposes a good faith requirement in the proposal
> of Chapter 11, 12 and 13 plans, see U.S.C. §§1129(a), 1225(a)(3), 1325(a)(3)
> (1999), no such mandate is articulated under Chapter 7.  §707(a) of the
> "Bankruptcy Code provides that a bankruptcy court
>
> > May dismiss a case under this chapter only after notice and a hearing and
> > only for cause, including—
>
> (1) unreasonable delay by the debtor this is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 26; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such
> additional times as the court may allow after the filing of the petition commencing
> such case, the information required by paragraph (1) of section 521, but only on a
> motion by the United States Trustee."
>
> > The instances of "cause" set forth in §707(a) are merely illustrative and are
> not an exhaustive listing.  *In re Hammonds*, 139 B.R. 535 (Bankr. D. Colo.

1992)."

The *Etcheverry* court goes on to recognize that a number of bankruptcy cases have found that the lack of good faith is a valid cause of dismissal under §707(a) citing several at page 504 including several in the Movants brief, i.e. *In re Zick* 931 F. 2d 11244, 1126-27 (6th Cir. 1991).

But Judge Daniel goes further:

"In 1978 Congress enacted a new Bankruptcy Code.  The Code did not contain any express requirement that bankruptcy petitions filed be filed in good faith.  It, however, did retain the concept that where a Debtor chooses to maintain its relationship with its creditors in an attempt to reorganize, the Debtor must demonstrate good faith in that relationship See 11 U.S.C. §§1129(a)3(3), 1225(a)(3),1325(a)(3).  The foregoing provision contains identical language mandating that the court prior to confirming a Chapter 11, 12, or 13 plan, must find that the reorganization proposal has been made in good faith.  [Judge Daniel] finds that the absence of this language in the Bankruptcy Code's liquidation chapter, chapter 7, means that Congress did not incorporate a good faith requirement when a bankruptcy court rules on motions to dismiss under 11 U.S.C. §707(a). Further support for this result comes from changes not made by Congress when it amended the Bankruptcy Code in 1986.  It declined to insert a good faith requirement into §707(a) when it changed §707(b). Also in 1986 Code changes strengthened the ability of United States Trustees to initiate action under §707(b) where there existed substantial abuse.  Judge Daniel agrees  with the  bankruptcy

judge he was reviewing in *Etcheverry* that  "if Congress had wanted a 'substantial abuse' provision in 707(a) they could have inserted it as they did in §707(b), but they did not do so" *In re Etcheverry*, 221, B.R. at 525.

The exclusion of good faith language in 11 U.S.C. §707(a) makes good sense if one examines the relationship of the Debtor and creditor in a liquidation case.  When a Debtor liquidates, it surrenders all of its nonexempt assets for distribution among its creditors, and the debtor-creditor relationship is presumably terminated.  Since liquidation requires no ongoing relationship between the Debtor and creditor, the ability to discharge should be made available to any Debtor that is willing to risk the chance that some of its debts may not be discharged."

Judge Daniel took issue with two prior Colorado Bankruptcy Courts that had relied on good faith under 707(a).

Section 707(a) allows the court to dismiss a chapter 7 proceeding for "cause," with three enumerated examples of cause that the courts have held to be non-exclusive.  The Second Tenth Circuit case referenced in paragraph one of this argument is written by the Chief Judge of the New Mexico bankruptcy court.  *Bushyhead*, is worth review as it discusses in detail the treatment of "bad faith" under 707(a) in other jurisdictions where there are holdings at the circuit level in point.  It should not come as surprising that the courts that do find "bad faith" available legal grounds struggle with the manner in which the finding of fact necessary for such a holding should be approached.

Two (2) Circuit Courts, the Sixth Circuit and the Third Circuit, have held that a lack of good faith can constitute "cause" for dismissal under 11 U.S.C. §707(a). *See*

*Zick,* 931 F.2d at 1127 (Sixth Circ. 1991) ("lack of good faith is a basis for dismissal

under § 707(a)"); *In re Tamecki,* 229 F.3d 205, 207 (3rd Cir. 2000) (relying

on *Zick,* stating that "Section 707(a).allows a bankruptcy court to dismiss a petition for

cause if the petitioner fails to demonstrate his good faith in filing.") (citations

omitted).[7] In *Huckfeldt,* the Eighth Circuit took a slightly different approach, reasoning

that "framing the issue in terms of bad faith may tend to misdirect the inquiry away from

the fundamental principles and purposes of Chapter 7," and holding that a court's

determination of whether to dismiss a Chapter 7 bankruptcy case under 11 U.S.C. §

707(a) is "better conducted under the statutory standard, `for cause.'" *Huckfeldt,* 39 F.3d

at 832. (Eighth Circ. 1994) "[B]ad faith under §707(a) [should] be limited to extreme

misconduct falling outside the purview of more specific Code provisions, such as using

bankruptcy as a `scorched earth' tactic against a diligent creditor ..." *Id.* (citing *In re

Khan,* 172 B.R. 613, 624-626 (Bankr.D.Minn.1994)).

The Ninth Circuit takes a little different approach.  The Ninth Circuit has held that

"bad faith as a general proposition does not provide `cause' to dismiss a Chapter 7

petition under §707(a)." *Padilla,* 222 F.3d at 1191. Like the Eight Circuit, the Ninth

Circuit holds that conduct constituting cause to dismiss a Chapter 7 case must fall

outside the purview of more specific provisions of the Bankruptcy Code. Based on the

rule of statutory construction that the specific provision takes precedence over the

general, the Ninth Circuit reasoned that "[a] Debtor's misconduct should be analyzed

under the most specific Code provision that addresses that type of misconduct." *In

re Padilla,* 222 F.3d 184, at 1192 (Ninth Circ. 2000).   Under the Ninth Circuit's

approach, conduct that falls within the Bankruptcy Code's provisions governing

objections to discharge or dischargeability of debts cannot constitute cause for dismissal

under 11 U.S.C. § 707(a).

THE FACTOR ANALYSIS OF GOOD FAITH

Citing several bankruptcy court decision Judge Parker  adopted a sixteen factor approach

to analyze what is "bad faith" as used by the totality of circumstance courts, Judge

Parker considered factors  1, 2, 6, 9, 13, and 16 as suggested by the Appellee, then

considered factors 10, 12 and 14 on her own.  She found only that factor 4 and 15 favor

the Debtor.  She did not consider factors 5, 8, and 11 for want of information. At least

one court within the Tenth Circuit has found the factors "of no value. "At least five of

the factors relate to the debtor's ability to pay.  Three relate to a Debtor trying to obtain a

discharge as a result of collection efforts or amount of debt owed to a single creditor.

Others relate to conduct that precludes a discharge.  Two are so vague as to be

meaningless*.", Bushyhead id.* at 149.  Chief Judge Michael for the Oklahoma

Bankruptcy Court takes apart the value of fifteen of the factors as contained in *In re

Baird*, 456 B.R. 112, 116-117 (Bankr. M.D. Fla. 2010), in his *Bushyhead* decision.

Judge Marshall is correct.  For instance, Judge Parker found factor 1," Whether

Debtor's manipulations (if any) had the effect of frustrating one particular creditor"

come down in CWT's favor.  But Sigma Financial Services, the IRS, and the State of

California all had brought adversary proceedings in the first chapter 11, and had claims

that were stayed to varying degrees. CWT is only one of several nearly equally sized

unsecured creditors.  It could be argued that Richard Rofé, whose claim is secured by a

first mortgage on the Debtor's home and who has been unsuccessfully attempting to foreclose since early 2017, is significantly more impacted than the CWT Parties.   It could also be argued that CWT with its non- dischargeability holding was probably effected less by the Debtor's attempts at reorganization.  And what "manipulations" is she addressing?  The Debtor was not buying, selling, transferring, hiding, or not disclosing.  In Chapter 11 number 2, he was successfully stockpiling cash to deal with creditors.  It cannot be argued that the accumulation of $466,000 frustrated anyone. It was likely an abuse of discretion to completely ignore this accumulation when considering whether the Debtor's efforts were "frustrating" anyone as Judge Parker did.

Next she found Factor 2, "The absence of an attempt to pay creditors" comes down in CWT's favor.  Counsel has trouble seeing the accumulation of $466,000 in a short fifteen months, designating it for use in paying creditors, not a very significant attempt to "pay creditors."  Debtor's counsel has not had many clients with the earning power it took to survive comfortably and accumulate this sort of war chest.   This same accumulation address factor 6, "using bankruptcies to the conscious detriment of creditors."  How is this accumulation a detriment to creditors?   Moving just three of the factor analysis into the Debtor's column and the opposite result is warranted.

Judge Parker considered factor 16, "Whether there are multiple bankruptcy filings or other procedural gymnastics,"  without explaining what constitutes "procedural gymnastics" she described failing to get a chapter 11 plan confirmed as such, as if the Debtor intended that to be the case.  One manifest error on this one is that she accused the Debtor of three prior bankruptcies, two in Wyoming and one in Arizona.  The Debtor

is a Wyoming resident ant not eligible to file bankruptcy in Arizona.  He never has.

There are only the two chapter 11's in Wyoming and the chapter 7 this appeal concerns.

(Transcript of the dismissal hearing page 34 line 13). That mistake probably occurred

because the company that the Debtor was the chief executive for when the refinery was

purchased, filed chapter 11 in Arizona.  Mr. Danzik was not in charge of RDX at the

time of RDX's Chapter 11.  Anthony David John Ker was the chief executive officer (as

Board Chairman) when the chapter 11 was filed in Arizona. Mr. Ker testified at the

dismissal hearing in this case.

Judge Parker also referenced unfiled tax returns after three and a half years which

is misleading.  The Internal Revenue Service has filed a claim in the chapter 7 showing

"open tax years," but not because Mr. Danzik has not tendered all years' returns.  It turns

out that if there are prior years' taxes unpaid the IRS is not in a particular hurry to

accomplish its review of the tendered return and until a reviewing revenue officer signs

off on the tax return as tendered it is not considered, by the officer who files bankruptcy

proofs of claim. To be a filed return.  The fact that the proof of claim in Mr. Danzik's

case shows open years without filed returns is something over which he has no control.

He has done all he can do by tendering returns for all prior years.

GOOD FAITH WITHOUT FACTORS

The eleventh Circuit declined the fifteen factor test outlined in *Baird* and followed

the bankruptcy court, see *In re Piazaa* 719 F.3rd 1253 (11 Circ. 2013). "In light of the

inherently discretionary nature, a totality-of-the-circumstances approach is the correct

legal standard for determining bad faith under §707(a).  Adopting a case by case

approach looking for atypical conduct that falls short of the "honest and forthright invocation of the Code's protections.  Here bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions , purpose, or spirit of the code." *Piazaa id,*

In response to the argument that such a test is so vague as to be little more than a "sniff test" wherein the *Piazaa* bankruptcy judge replied "his or her own [subjective] standards," the Eleventh Circuit summarily stated that such arguments were "without merit." In addition, the *Piazza* court held that the decision to dismiss a case on the basis that it was filed in bad faith was reviewed under the abuse of discretion standard, meaning that the decision will be reversed only when the appellate court is convinced that there has been "a manifest disregard of right and reason."

Nonetheless, Chief Judge Marshall in the Oklahoma Bankruptcy Court in his *Bushyeard* decision, found the *Piazaa* analysis troubling.  "It really leaves a bankruptcy judge a massively deferential standard of review."  He quoted Judge Erik Kimball as follows:

"To say that the lack of good faith of a Debtor may be cause for dismissal of a chapter 7 case alone, provides no guidance on what the court should consider to determine whether a debtor acted in bad faith is one entrusted to the court's discretion and may only be overturned for an abuse of that discretion.  For this reason, the court should step cautiously when asked to exercise the power to deny a Debtor access to its jurisdiction.

Debtor Danzik did not fail to attend hearings where summoned, he did not fail to cooperate with the chapter 7 trustee, he did not fail to file any necessary chapter 7 filings, no filing was necessarily amended after challenge, he made a good faith effort to adjust chapter 11 values from three years before which lead Judge Parker to be concerned about his veracity completely without any evidence before her on which to base such a conclusion.  In short, this case lacks the clear instance of conduct beyond the acceptable norm in the administration process from which a finding of "bad faith," can be supported.

Judge Parker dismissed the prior chapter 11's for a variety of reasons that bordered upon bad faith.  Chapter 11's can be statutorily dismissed for bad faith.  It stretches jurisdiction to find in a chapter 7 that bad faith in a prior chapter 11 should be considered grounds for dismissal of the chapter 7 case.  Multiple filings are not necessarily grounds for dismissal or congress would have said so.  Multiple filings ending with the total loss of control evidenced in chapter 7 would hardly ever seem to be in bad faith.  Giving up, maybe, but in good faith.

Probably the most significant finding of Judge Parker not supported on the record is that there would be no proceeds available for the distribution to creditors if the chapter 7 were allowed to go forward.  She made this finding denying the conversion of the second chapter 11 case and again in the order of dismissal in this case.  This is a manifest error of fact.  The Debtor's petition date assets include:

1.   When the Chapter 11 was dismissed the Debtor had over $457,057.36 in his

debtor-in-possession checking accounts.  That total was as of December 31,

2018.  The case was dismissed February 2, 2019 and no January report was filed.

2. RDX Technologies as a civil action pending in Alberta Canada based on fraud in the inducement of a refinery sale contract against the CWT parties.  It has been years developing.  Mr.  Danzik testified claims of $90,000,000 in damages were asserted.  Mr. Danzik is not a party to that litigation, although, he signed the sale agreement as a corporate officer and personal guarantor. This is significant because Mr. Danzik has promissory notes signed by representatives of RDX that total over two-and-a-half million dollars the repayment of which would be funded by a recovery in the litigation. (Transcript of the Dismissal hearing pages 36 and 37).  He also has indemnification agreements with RDX Technologies for all the legal expenses he has incurred being destroyed in the New York District Court and three Wyoming bankruptcies.  Litigation is not money in the bank, but this is litigation into which RDX has spent tens of thousands of dollars so far.

3. Mr. and Mrs. Danzik's Cody, Wyoming home is valued well over a million dollars, which is enough value to free up the liens against the Batmobiles which are also collateral on the mortgage against the home.

4. Mr. Danzik's personal property includes two of the Batman Movie Batmobiles which he testified could be successfully marketed at "close to a million dollars (Transcript of Dismissal hearing page 38).

The dismissal hearing transcript quotes are significant. Despite the requirement to carry the burden of proof for dismissal by a preponderance of the evidence [Dismissal order page 5 of 14 at paragraph A] the CWT Parties put on no evidence at the dismissal hearing. Dismissal hearing testimony is undisputed.

It makes no sense to dismiss a Chapter 7 case when there are assets to be administered for the benefit of creditors, regardless of the nature of the Debtor's pre-petition conduct. If a trustee can recover money and pay it to creditors, that is what should happen. In most cases a distribution from the bankruptcy trustee is the only money creditors are likely to see from the Debtor.

"In sum,, the Court should conclude if a bankruptcy case should be dismissed "for cause" under §707(a) only under one of the enumerated subsections or "where the Debtor has taken advantage of the court's jurisdiction in manner abhorrent to the purposes of Chapter 7. *Kane & Kane,* 406 B.R. at 168

## VII.   Conclusion

The Appellant would have this court reverse and set aside the order of dismissal in this case.

## VIII.   Certificate of Compliance

## Certificate of Compliance with Rule 8015(a)(7)(B) or 8016(d)(2)

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)(2) because:

XX   This brief contains **5,572**  words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D), or

☐   This brief uses a monospaced typeface having no more than 10½ characters per inch and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

 /s/ Ken McCartney                                          Date:  September 16, 2019.
Signature

Print name of person signing certificate of compliance:

Ken McCartney Bar No. 5-1335

## IX.     Statement of Related Cases

There are no pending or closed bankruptcy cases that are related to the base case in this appeal.