No. 19-CV-00136-NDF

_____

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF WYOMING**

_____

DENNIS MEYER DANZIK,
*Appellant*,

V.

CWT CANADA II LIMITED PARTNERSHIP, AND
RESOURCE RECOVERY CORPORATION.
*Appellees*.

_____

On Appeal from the United States Bankruptcy Court for the District of Wyoming,
Bankruptcy Case No. 19-20116, the Honorable Cathleen D. Parker, Presiding

_____

**APPELLEES' BRIEF**

_____

MARKUS WILLIAMS YOUNG
& HUNSICKER LLC

By:  Bradley T. Hunsicker
106 East Lincolnway, Suite 300
Cheyenne, WY  82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

*Counsel for CWT Canada II Limited
Partnership and Resource Recovery
Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... 3

JURISDICTIONAL STATEMENT ................................................................. 5

STATEMENT OF THE ISSUES PRESENTED AND APPLICABLE STANDARDS OF REVIEW .................................................................................. 6

STATEMENT OF THE CASE ......................................................................... 8

SUMMARY OF THE ARGUMENT ............................................................ 13

ARGUMENT ..................................................................................................... 14

    I.    The Bankruptcy Court Did Not Err in Finding that Bad Faith Can Constitute "Cause" to Dismiss under § 707(a). .................................................................... 14

        A.    The Majority View – Bad Faith Can Constitute "Cause" for Dismissal – is Well-Reasoned Law. .............................................................................. 14

        B.    Danzik's View – Bad Faith Cannot Constitute "Cause" for Dismissal – is Not Persuasive and Should Not be Followed. .............................................. 17

    II.    The Bankruptcy Court Did Not Abuse its Discretion in Concluding that Danzik Filed his Bankruptcy Case in Bad Faith and Did Not Commit Clear Error in Making Factual Findings Supporting that Conclusion. ....................................................... 19

        A.    The 16-Factor Test. .......................................................................... 21

        B.    Totality-of-the-Circumstances without Application of the 16 Factors. ...................... 27

    III.    The Bankruptcy Court Did Not Abuse Its Discretion in Dismissing the Bankruptcy Case with Prejudice. ........................................................................................ 32

CONCLUSION .................................................................................................. 35

CERTIFICATE OF COMPLIANCE ........................................................... 36

# TABLE OF AUTHORITIES

Cases

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985). ............................................................ 6
*Asociación de Titulares de Condominio Castillo v. DiMarco*, 581 B.R. 346 (B.A.P. 1st Cir. 2018) ................................................................................................................................. 26
*Crocker v. Bushyhead (In re Bushyhead)*, No. 13-12897-M, 2017 U.S. Dist. LEXIS 64767 (N.D. Okla. Apr. 28, 2017) ........................................................................................................... 5
*Dinova v. Harris (In re Dinova)*, 212 B.R. 437 (2nd Cir. BAP 1997) ........................................ 18
*Franco v. U.S. Tr. (In re Franco)*, 2016 Bankr. LEXIS 2185 (B.A.P. 9th Cir. June 2, 2016) ...... 5
*In re Baird*, 456 B.R. 112 (Bankr. M.D. Fla. 2010) .................................................................. 21
*In re Blinder, Robinson & Co., Inc.,* 124 F.3d 1238 (10th Cir. 1997) ......................................... 6
*In re Brown*, 399 B.R. 162 (Bankr. W.D. Va. 2009) ................................................................ 28
*In re Bushyhead*, 525 B.R. 143 (8th Cir. 1994) ......................................................... 15, 16, 17, 19
*In re Bushyhead*, No. 15-CV-89-JED-PJC, 2016 U.S. Dist. LEXIS 186308 (N.D. Okla. May 25, 2016) .......................................................................................................................... 30
*In re Etcheverry*, 221 B.R. 524 (Bankr. D. Colo. 1998) ........................................................... 17
*In re Guebert*, No. 07-41165, 2008 Bankr. LEXIS 1093 (Bankr. D. Kan. Apr. 11, 2008) ......... 33
*In re Hammonds*, 139 B.R. 535 (Bankr. D. Colo. 1992) .......................................................... 20
*In re Hancock*, No. 15-10037-JDL, 2015 Bankr. LEXIS 874 (Bankr. W.D. Okla. Mar. 19, 2015) ................................................................................................................................... 33
*In re Jakovljevic-Ostojic*, 517 B.R. 119 (Bankr. N.D. Ill. 2014) ............................................... 13
*In re Kane & Kane*, 406 B.R. 163 (Bankr. S.D. Fla. 2009) .................................................. 20, 21
*In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282 (Bankr. D.N.M. July 10, 2015) ................................................................................................................................... 14, 21
*In re Norton*, 319 B.R. 671 (Bankr. D. Utah 2005). ........................................................... 32, 34
*In re Peterson Distrib., Inc.*, 82 F.3d 956 (10th Cir. 1996) ........................................................ 6
*In re Schwartz*, 799 F.3d 760 (7th Cir. 2015) ......................................................................... 15
*In re Stockwell*, 579 B.R. 367 (Bankr. E.D.N.C. 2017) ............................................................ 28
*In re Tanenbaum*, 210 B.R. 182 (Bankr. D. Colo. 1997) ......................................................... 14
*In re Uche*, 555 B.R. 57 (Bankr. M.D. Fla. 2016) .................................................................. 20
*In re Yim Kealamakia*, 2013 Bankr. LEXIS 2777 (Bankr. D. Utah July 9, 2013) .......... 14, 15, 17
*Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991) ............................... 14
*Janvey v. Romero*, 883 F.3d 406 (4th Cir. 2018) .................................................................... 15
*Krueger v. Torres (In re Krueger)*, 812 F.3d 365 (5th Cir. 2016) ..................................... 5, 15, 30
*Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364 (3rd Cir. 2007) ...................... 14
*Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253 (11th Cir. 2013) ............................................................................................................................ 14, 26, 27
*Shangraw v. Etcheverry (In re Etcheverry)*, 242 B.R. 503 (D. Colo. 1999) ......................... 16, 17
*Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205 (3rd Cir. 2000) .............................................. 14
*United States v. Yurek*, 925 F.3d 423 (10th Cir. 2019) .............................................................. 31

Statutes

11 U.S.C. § 349(a) ............................................................................................................... 32
11 U.S.C. § 362(a) ............................................................................................................... 22

11 U.S.C. § 707(a) ............................................................................ passim
28 U.S.C. § 158(a)(1)............................................................................ 5
28 U.S.C. § 158(c)(1)(A) ...................................................................... 5
28 U.S.C. §§ 151, 157(a) and (b)(1) ..................................................... 4

Rules

Fed. R. Bankr. P. 8002 and 8003 .......................................................... 5
Fed. R. Bankr. P. 8005(a) ..................................................................... 5
Fed. R. Bankr. P. 8014(a)(6).................................................................. 8
Local Rule 85(a) ................................................................................... 5

# JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court") entered both its Decision Memorandum on Motion to Dismiss Chapter 7 Case with Prejudice (the "Ruling") and the accompanying Judgment (the "Judgment") on July 24, 2019.  The Judgment, supported by the Ruling, is a final order pursuant to Federal Rule of Bankruptcy Procedure 7054. Appellant/Debtor Dennis Meyer Danzik ("Danzik") appeals and asks this Court to reverse or remand the Ruling and Judgment.

The Bankruptcy Court has subject matter jurisdiction over Danzik's bankruptcy case (the "Bankruptcy Case") under 28 U.S.C. §§ 151, 157(a) and (b)(1), and Rule 85(a) of the United States District Court for the District of Wyoming Local Civil Rules.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1) and (c)(1)(A).  Danzik timely filed his Notice of Appeal on February 19, 2019, pursuant to Federal Rule of Bankruptcy Procedure 8002 and 8003.

Danzik filed a statement of election pursuant to Federal Rule of Bankruptcy Procedure 8005(a), in which he elected to have this Court hear this appeal instead of the Tenth Circuit Bankruptcy Appellate Panel.

## STATEMENT OF THE ISSUES PRESENTED AND
## APPLICABLE STANDARDS OF REVIEW

Danzik challenges the Bankruptcy Court's legal conclusion that filing for protection under chapter 7 of the Bankruptcy Code in bad faith can constitute "cause" to dismiss under 11 U.S.C. § 707(a) (hereinafter, "§ 707(a)").  Danzik also challenges the Bankruptcy Court's conclusion that he filed his Bankruptcy Case in bad faith warranting dismissal of his Bankruptcy Case.

"The bankruptcy court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo.  The bankruptcy court's ultimate decision to dismiss under § 707(a) is reviewed for an abuse of discretion." *Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 369 (5th Cir. 2016) (citation omitted) (relied on by *Crocker v. Bushyhead* (*In re Bushyhead*), No. 13-12897-M, 2017 U.S. Dist. LEXIS 64767, at *2 (N.D. Okla. Apr. 28, 2017); *Franco v. U.S. Tr.* (*In re Franco*), 2016 Bankr. LEXIS 2185, at *7 (B.A.P. 9th Cir. June 2, 2016) ("The decision to dismiss a bankruptcy case with prejudice and impose a filing bar is reviewed for abuse of discretion.").  "A finding a fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake has been made." *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996).  Courts have described the high standard of deference to the Bankruptcy Court's factual findings as follows:

> If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*In re Blinder, Robinson & Co., Inc.,* 124 F.3d 1238, 1241 (10th Cir. 1997*)* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

Appellees/Creditors CWT Canada II Limited Partnership and Resource Recovery Corporation (the "CWT Parties") phrase the issues on appeal as follows:

1. Did the Bankruptcy Court err in finding that filing a chapter 7 petition in bad faith can constitute "cause" to dismiss under § 707(a)?  The Court reviews this issue *de novo*.

2. Did the Bankruptcy Court commit clear error in making certain factual findings that supported the Bankruptcy Court's conclusion that Danzik filed his Bankruptcy Case in bad faith?  The Court reviews this issue for clear error.

3. Did the Bankruptcy Court abuse its discretion in determining that Danzik filed his Bankruptcy Case in bad faith warranting dismissal of Danzik's Bankruptcy Case with prejudice?  The Court reviews this issue for an abuse of discretion.

## STATEMENT OF THE CASE[1]

Danzik stole millions of dollars from the CWT Parties and has since abused the bankruptcy system to thwart the CWT Parties' collection efforts.  Based on Danzik's obstructionist tactics and dishonesty in his previous cases, and the fact that his Bankruptcy Case would serve no economic purpose, the Bankruptcy Court dismissed the Bankruptcy Case for bad faith, with a 180-day bar to refiling.  (App. at 104–14.)

The Bankruptcy Case was Danzik's third bankruptcy case in less than four years.  (App. at 111.)  Prior to the Bankruptcy Case, Danzik filed two unsuccessful chapter 11 cases, which the Bankruptcy Court dismissed due to Danzik's failure or inability to file or confirm a plan, and for bad faith.  (App. at 105.)  These prior bankruptcy filings, along with Danzik's history with the CWT Parties, are relevant to the Bankruptcy Court's Ruling. (App. at 104–107) (reviewing this background).

On January 3, 2016, a New York court ruled that Danzik stole approximately $7 million from the CWT Parties.  (App. at 105.)  The next day, Danzik filed his first chapter 11 bankruptcy case (the "First Case").  *Id.*  After the

---

[1]  Danzik's opening Brief includes a "Statement of the Case" but that section does not also include "the facts relevant to the issues submitted for review . . . with appropriate references to the record" as required by Fed. R. Bankr. P. 8014(a)(6). As a result, this Court should not rely on Danzik's "Statement of the Case."

Bankruptcy Court granted relief from the automatic stay to allow the New York

court to formally enter its judgment, the New York court found:

> 1) Danzik ignored countless court orders with absolutely no regard for the court's authority; 2) Danzik was the epitome of a recalcitrant, contemptuous, and incorrigible litigant whose pleadings deserved to be stricken; and 3) the court's sanctions were necessary, "to preserve the integrity of the court." *Id*.

The CWT Parties obtained a judgment in the amount of $7,033,491.13

against Danzik in the New York action. *Id*. The Bankruptcy Court would later

rule that this judgment is nondischargeable. (App. at 107) ("The Judgment is non-

dischargeable as a matter of law under Sections 523(a)(2) and (a)(6).").

On March 8, 2017, the Bankruptcy Court dismissed the First Case because

Danzik was unable to effectuate a plan, there was substantial or continuing loss to

or diminution of the estate with no reasonable likelihood of rehabilitation, and

Danzik lacked good faith in filing and administering the case. (App. at 105 & n.8.)

The First Case lasted 14 months. (App. at 105.)

On December 6, 2017, Danzik filed a second chapter 11 (the "Second

Case"). (App. at 4, 105.) During the Second Case, Danzik never filed a plan and

in fact admitted to "wisely" using bankruptcy protection and "opt[ing], for now to

forgo" the plan process while he pursued other litigation. (App. at 21.)

On February 6, 2019, the Bankruptcy Court dismissed the Second Case

because "[Danzik] 1) is grossly mismanaging the estate by failing to timely file

monthly operating reports, 2) is not able to effectuate a confirmable plan; and 3) filed this case in bad faith." (App. at 105–06 & n.11.) Specifically, "[Danzik] is using the breathing space to avoid his financial obligations. He has not argued nor demonstrated he is using it to rehabilitate any business." (App. at 10 & n.13.) The Bankruptcy Court quoted its ruling dismissing the First Case, wherein it concluded that "[Danzik's] circumstances have not changed. The CWT litigation continues, and Creditors' claims are on hold while [Danzik] parks in bankruptcy." (App. at 105 & n. 14.) The Bankruptcy Court addressed whether dismissal or conversion was in creditors' best interest and concluded that the Second Case should be dismissed. (App. at 106.) Specifically, the Bankruptcy Court found that assets

> would only be available to the IRS and secured creditors, leaving no assets for a trustee to administer. There is no pending litigation that would benefit a Chapter 7 estate. The court applies the same analysis from [Danzik's] first case:
>
> > It is in the best interest of the estate to dismiss. Any liquidation would be for the sole benefit of the secured creditors. A liquidation bankruptcy case is not administered for the benefit of a debtor's secured creditors but for the benefit of its unsecured creditors.

(App. at 106.)

On February 14, 2019, Danzik asked the Bankruptcy Court to convert the Second Case to Chapter 7 instead of dismissing it. (App. at 5–6, 105.) On March 8, 2019, the Bankruptcy Court denied that motion, noting that neither Danzik nor creditors had argued for conversion. (App. at 106 & n.15.)

After the Second Case was dismissed, the CWT Parties moved to enforce their judgment against Danzik.  In response, on March 12, 2019, Danzik filed the Bankruptcy Case.  (App. at 6, 107).  After filing, Danzik asked the Bankruptcy Court to extend the automatic stay and the Bankruptcy Court denied that motion because "[Danzik] did not provide clear and convincing evidence he filed his Chapter 7 case in good faith to extend the stay."  (App. at 107).

On March 20, 2019, the CWT Parties filed their Motion to Dismiss Chapter 7 Case, with Prejudice (the "Motion to Dismiss").  (App. at 1–23)   In the Motion to Dismiss, the CWT Parties argued that Danzik's history and dilatory bankruptcy filings showed that he filed his Bankruptcy Case in bad faith warranting dismissal. (App. at 3–22).

On April 10, 2019, Danzik filed Danzik's Response to the CWT Parties' Motion to Dismiss the Above Described Chapter 7 Proceeding (the "Response"). (App. 24–31.)  In the Response, Danzik argued that bad faith cannot legally constitute "cause" to dismiss a chapter 7 bankruptcy filing, and even if it did, he did not file his Bankruptcy Case in bad faith.  (App. at 25–28.)

On May 2, 2019, the CWT Parties filed their Reply to Danzik's Response to Motion to Dismiss Chapter 7 Case, with Prejudice (the "Reply") and addressed Danzik's legal argument that bad faith is not "cause."  *Id.*  (App. at 32–41.)

On May 15, 2019, the Bankruptcy Court held an evidentiary hearing on the Motion to Dismiss (the "Hearing").  (App. at 42.)  At the Hearing, the CWT Parties relied on legal argument and the Bankruptcy Court's extensive record and history involving Danzik, which showed that Danzik used bankruptcy to shield himself from the CWT Parties' collection efforts without any attempt to pay creditors. (App. at 47, 90).

Debtor himself testified that he filed chapter 7 to delay the CWT Parties collection efforts while his litigation against the CWT Parties proceeded in Canada.   (App. at 75) ("Q. What are you trying to accomplish with this?  A. To give myself enough time and leeway to prosecute the lawsuit in Canada, and basically to get to a point where I can get a fresh start once I prosecute that case."). Danzik testimony at the Hearing primarily addressed the likelihood of Danzik's success in the Canada litigation and what Danzik believes he will recover out of that litigation.  (App. at 77–78.)  Danzik believes that, if he is successful in the Canada litigation, he will recover millions on alleged promissory notes and 20% of the recovery—which Danzik asserted would be "in excess of $90 million." *Id.* Danzik offered no exhibits to support these contentions.

On June 24, 2019, the Bankruptcy Court entered its Ruling.  (App. at 104.) The Bankruptcy Court found as a matter of law that bad faith may constitute "cause" to dismiss under § 707(a).  (App. at 109).  The Bankruptcy Court then

applied 16 factors to assess whether Danzik filed in bad faith.  (App. at 110–113.)

The Bankruptcy Court concluded that "[u]nder the totality of the circumstances . . .

the court finds CWT Parties met its burden proving cause to dismiss the Chapter 7

for bad faith."  (App. at 113.)

The Bankruptcy Court also found that Danzik's testimony and argument

about his desire for a "fresh start" and orderly liquidation did not rebut the showing

of bad faith.  (App.at 113.)  The Bankruptcy Court found that "the realistic results

of his chapter 7 is to only pay the Internal Revenue Service tax liability."  (App. at

114.)  Finally, the Bankruptcy Court barred Danzik from filing another bankruptcy

case for 180 days.  (App. at 116, 118.)

On June 27, 2019, Danzik filed his Notice of Appeal and Statement of

Election.  On September 16, 2019, Danzik filed Appellant's Opening Brief

("Danzik's Brief").

## SUMMARY OF THE ARGUMENT

The CWT Parties assert that the Bankruptcy Court correctly followed the

majority rule that, as a matter of law, bad faith can constitute "cause" to dismiss

under § 707(a).  Further, the CWT Parties assert that Bankruptcy Court neither

abused its discretion in concluding that, under the totality of the circumstances,

Danzik filed his Bankruptcy Case in bad faith, nor committed clear error in making

certain factual findings supporting that conclusion.  Just like his prior chapter 11

filings, Danzik filed the Bankruptcy Case to delay collection efforts against him.

Finally, the CWT Parties assert that the Bankruptcy Court did not abuse its

discretion in dismissing Danzik's Bankruptcy Case with a 180-day bar to refiling.[2]

## ARGUMENT

### I.   The Bankruptcy Court Did Not Err in Finding that Bad Faith Can Constitute "Cause" to Dismiss under § 707(a).

#### A. The Majority View – Bad Faith Can Constitute "Cause" for Dismissal – is Well-Reasoned Law.

The Bankruptcy Code provides: "The court may dismiss a case under this

chapter only after notice and a hearing and only for cause, including . . . ."

§ 707(a).  "The enumerated grounds for a 'for cause' dismissal are not exhaustive,

but merely illustrative."  *In re Jakovljevic-Ostojic*, 517 B.R. 119, 126 (Bankr. N.D.

Ill. 2014) (internal quotation marks omitted).

"Although not listed as one of the enumerated factors constituting cause for

dismissal under § 707(a), most courts have held that evidence of a debtor's bad

faith in filing a Chapter 7 case is cause for dismissal."  *In re McGuire-Pike*, No.

14-13365 ta7, 2015 Bankr. LEXIS 2282, at *8 (Bankr. D.N.M. July 10, 2015)

(internal quotation marks omitted).  But courts are split on this issue:

---

[2] Danzik addresses the Bankruptcy Court's "with prejudice" dismissal in his Statement of Issues and Summary of the Argument, Danzik's Brief at 11, but does not address in it the Argument.  *Cf.* Danzik's Brief at 21–22.  The argument is waived.

> The issue of whether bad faith can constitute cause for dismissal under § 707(a) has created a division among bankruptcy courts and circuit courts around the country. On the one hand, the Third, Sixth, and Eleventh Circuits have held that chapter 7 cases can be dismissed for a debtor's bad faith conduct under § 707(a). On the other hand, the Eighth and Ninth Circuits have held that bad faith is not a proper basis for a § 707(a) dismissal. Even within the Tenth Circuit, courts have split on the issue, but the Tenth Circuit Court of Appeals has yet to address this question.

*In re Yim Kealamakia*, No. 12-31822, 2013 Bankr. LEXIS 2777, at *11 & n.21 (Bankr. D. Utah July 9, 2013) (*citing Perlin v. Hitachi Capital Am. Corp.* (*In re Perlin*), 497 F.3d 364, 369 (3rd Cir. 2007); *Tamecki v. Frank* (*In re Tamecki*), 229 F.3d 205, 207 (3rd Cir. 2000); *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1126-27 (6th Cir. 1991); *Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 2013 U.S. App. LEXIS 13072, 2013 WL 3198005 (11th Cir. 2013)). Although there is a split in the Tenth Circuit, most courts in the Tenth Circuit follow the majority rule. *See, e.g.*, *In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282, at *9 (Bankr. D. N.M. July 10, 2015); *In re Snyder*, 509 B.R. 945, 950 (Bankr. D. N.M. 2014); *In re Quinn*, 490 B.R. 607, 616 (Bankr. D. N.M. 2012); *In re Tanenbaum*, 210 B.R. 182 (Bankr. D. Colo. 1997).

In addition to the Third, Sixth, and Eleventh Circuits, the Fourth and Fifth Circuits recently followed the majority view. *Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018) (citations omitted) ("For the most part, courts have recognized

that a debtor's bad faith in filing may constitute cause for dismissal under § 707(a). We think the majority view is the sounder one, because it is the most helpful in preventing serious abuses of the bankruptcy process."); *Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 370 (5th Cir. 2016) ("This circuit joins those courts that have held a debtor's bad faith in the bankruptcy process can serve as the basis of a dismissal 'for cause.'").  Although the Seventh Circuit has not followed this rule *per se*, it has approved using a bad faith analysis, but under the general umbrella of "cause."  *In re Schwartz*, 799 F.3d 760, 764 (7th Cir. 2015) ("[T]here's no need to consider whether their conduct amounts to 'bad faith.'  Redundant terminology should be avoided.").  And the Eighth Circuit, although cited above as having rejected bad faith dismissal, *see In re Yim Kealamakia*, 2013 Bankr. LEXIS 2777, at *11, supports bad faith dismissal for "extreme misconduct":

> Eighth Circuit has held that a debtor's bad faith in filing a Chapter 7 case may be cause for dismissal of the case, but that "bad faith under § 707(a) [must] be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched-earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction."

*In re Bushyhead*, 525 B.R. at 143 (*quoting In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994)).

In sum, seven circuits have found that a debtor's misconduct may be "cause" to dismiss under § 707(a).  "[This] is no more than acknowledgement in the chapter 7 context of what has long been recognized: Every bankruptcy statute since

1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 370 (5th Cir. 2016) (internal quotation marks omitted)

Here, the Bankruptcy Court followed the majority view.  (App. at 108–09, 113) ("Danzik responds the bankruptcy court does not have the ability to dismiss a chapter 7 case for lack of good faith. The court disagrees . . . .").

### B. Danzik's View – Bad Faith Cannot Constitute "Cause" for Dismissal – is Not Persuasive and Should Not be Followed.

Danzik asks this Court to find that the Bankruptcy Court erred in following the majority view—now expressly adopted by 5 circuits and followed (subject to additional qualification) by two others.  Danzik relies on two cases: *Shangraw v. Etcheverry* (*In re Etcheverry*), 242 B.R. 503 (D. Colo. 1999) and *In re Bushyhead*, 525 B.R. 136, 143 (Bankr. N.D. Okla. 2015).  These cases are distinguishable and the reasoning set out in *Etcheverry*, on which Danzik relies, is wrong.

First, both *Etcheverry* and *Bushyhead* addressed § 707(a) dismissal based on ability to pay.  *See In re Bushyhead*, 525 B.R. at 148 ("Dismissal of this case is sought for one reason and one reason only: to prevent the Bushyheads from obtaining the benefits of a bankruptcy discharge when it appears that they could have chosen to pay all or a portion of their scheduled debt."); *In re Etcheverry*, 221 B.R. 524, 525 (Bankr. D. Colo. 1998) ("There is absolutely no provision in the

Bankruptcy Code that would prevent or deter a debtor from filing a Chapter 7 case if he had the ability to repay some debt and could still maintain a comfortable lifestyle.").  Thus, neither *Bushyhead* nor *Etcheverry* addressed the situation here—a debtor who has filed bankruptcy multiple times to delay collection.  In fact, *Bushyhead*, like the Seventh Circuit, actually supports dismissal under § 707(a) for such actions, but simply rejects the term "bad faith."  *In re Bushyhead*, 525 B.R. at 151 ("There is no need for a court to step into the world of 'bad faith' in order to dismiss a case where a debtor has acted improperly in this case or a recently filed and dismissed case.").

Second, although *Etcheverry* makes much of the fact that there is no relationship between a chapter 7 debtor and creditors, this does not control: "[T]he absence of an ongoing post-petition relationship between the debtor and creditor in Chapter 7 does not in any way suggest a debtor's pre-petition bad faith can never provide 'cause' to dismiss." *In re Yim Kealamakia*, 2013 Bankr. LEXIS 2777, at *21–22 (footnote and internal quotation marks omitted) (rejecting *Etcheverry*).

Finally, *Etcheverry*'s reasoning that Congress could have adopted a good faith filing requirement in chapter 7, *In re Etcheverry*, 242 B.R. at 505 ("Congress deliberately omitted the good faith requirement from Chapter 7 of the Bankruptcy Code."), ignores § 707(a)'s language and history, which is not exhaustive or exclusive: "Dismissal for cause under section 707(a) is not limited to the three

examples enumerated within the section." *Dinova v. Harris* (*In re Dinova*), 212

B.R. 437, 442 (2nd Cir. BAP 1997) (*citing* H.R. Rep. No. 595, 95th Cong., 1st

Sess. 380 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 94 (1978) (stating that the

enumerated list contained in the statute is "not exhaustive, but merely illustrative")

(remaining citations omitted)); *see also Krueger v. Torres* (*In re Krueger*), 812

F.3d 365, 372 (5th Cir. 2016) ("Congress chose to include the broad language of

'for cause' in § 707(a) without any textual qualification."). *Etcheverry* ignores this

clear intent in favor of a cribbed reading based on what Congress could have done,

instead of what Congress did. Congress specifically left § 707(a) open for other

basis for dismissal.

The Court should reject Danzik's position, find that the Bankruptcy Court

did not err in following the majority view, and affirm.[3]

## II.  The Bankruptcy Court Did Not Abuse its Discretion in Concluding that Danzik Filed his Bankruptcy Case in Bad Faith

---

[3] As noted above, even courts that have rejected "bad faith" dismissal—the Eighth Circuit, Seventh Circuit, and *Bushyhead*—agree that dismissal is available for "extreme" conduct, abuse, or for improper actions in "a recently filed and dismissed case." Thus, even if the Bankruptcy Court erred in finding that "bad faith" is cause to dismiss under § 707(a), the Court should still affirm. The Court may affirm on any basis supported by the record, even though not relied on by the trial court. *Bundren v. Parriott*, 245 F. App'x 822, 825 (10th Cir. 2007). Here, the Debtor's conduct described in Part II and Part III, *infra*, is itself cause to dismiss, without considering whether it constitutes bad faith.

**and Did Not Commit Clear Error in Making Factual Findings Supporting that Conclusion.**

Danzik asserts that, even if bad faith is "cause" to dismiss under § 707(a), he did not file in bad faith.  Danzik's Brief at 16–22.  Danzik is wrong.

"To determine whether a chapter 7 case was filed in bad faith, courts must review the totality of the circumstances."  *In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282, at *9 (Bankr. D. N.M. July 10, 2015).  The Eleventh Circuit has characterized this test as follows:

> **The totality-of-the-circumstances inquiry looks for atypical conduct, that falls short of the honest and forthright invocation of the [Bankruptcy] Code's protections.** In making that determination, bankruptcy courts must, as they so often do, sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done. Under this inquiry, **bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.**

*In re Bushyhead*, 525 B.R. 136, 146 (Bankr. N.D. Okla. 2015) (internal quotation marks and citations omitted) (emphasis added) (alterations in original) (*quoting Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1271–72 (11th Cir. 2013)).

"[T]he decision as to whether a debtor acted in bad faith is one entrusted to the court's discretion and may only be overturned for an abuse of that discretion." *In re Uche*, 555 B.R. 57, 60 n.10 (Bankr. M.D. Fla. 2016) (quoting *In re Kane & Kane*, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009); *In re Hammonds*, 139 B.R. 535,

542 (Bankr. D. Colo. 1992) ("It was not abuse of discretion to conclude that the

factors found in this case amounted to a lack of good faith.").

### A. The 16-Factor Test.

Some bankruptcy courts, including the Bankruptcy Court in this case, use

the following sixteen factors in applying the totality-of-the-circumstances analysis:

1. Whether the debtor's manipulations (if any) had the effect of frustrating one particular creditor;
2. The absence of an attempt to pay creditors;
3. The debtor's failure to make significant lifestyle changes;
4. Whether the debtor has sufficient resources to pay a substantial portion of debts;
5. Whether the debtor inflated expenses to disguise financial well-being;
6. Whether the debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;
7. Whether the debtor reduced his creditors to a single creditor in the months prior to filing his petition;
8. Whether the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
9. Whether the debtor filed the case in response to a judgment in pending litigation;
10. The unfairness of using Chapter 7;
11. Whether the debtor is paying debts to insiders;
12. Whether the debtor transferred assets;
13. Whether the debtor employed a deliberate and persistent pattern of evading a single major creditor;
14. Whether the debtor failed to make candid and full disclosure;
15. Whether the debts are modest in relation to assets and income; and
16. Whether there are multiple bankruptcy filings or other procedural 'gymnastics.'

*In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282, at *9 (Bankr.

D.N.M. July 10, 2015); *see also In re Baird*, 456 B.R. 112, 116 (Bankr. M.D. Fla.

2010) (characterizing the ninth factor as whether "the debtor filed the case in

response to a judgment, pending litigation, or collection action"). "The circumstances of each debtor are unique, and the proper weight given to each fact necessarily depends on all of the other facts presented." *In re Kane & Kane*, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009).

Danzik challenges the Bankruptcy Court's findings on factors 1, 2 and 6 based on his cash accumulation during the Second Case. *See, e.g.*, Danzik's Brief at 17 ("Counsel has trouble seeing the accumulation of $466,000 in a short fifteen months, designating it for use in paying creditors, [is] not a very significant attempt to 'pay creditors.'"). Under factor 14, Danzik argues that the Bankruptcy Court erred in finding that his asset valuations were inconsistent and that he has unfiled tax returns. Danzik's Brief at 17–18, 20. Under factor 16, Danzik argues that the Bankruptcy Court miscounted his bankruptcy filings. Danzik's Brief at 17–18. The CWT Parties will address these factors in turn and show that the Bankruptcy Court did not commit clear error in its findings under the 16 factors.

Factor 1 is "[w]hether Debtor's manipulations (if any) had the effect of frustrating one particular creditor." (App. at 110.) The Bankruptcy Court found that Danzik filed the First Case in response to the New York litigation, filed the Second Case in response to the CWT Parties taking steps "to enforce the contempt order," that the CWT Parties had "pursued Debtor throughout his bankruptcy cases," and that "Debtor filed Chapter 7 after the CWT Parties attempted to collect

on its judgment." The Bankruptcy Court concluded that "Debtor's manipulation frustrated the CWT Parties." *Id.*

Danzik argues that his filings also frustrated other creditors, that he did not engage in "manipulations" because he was not engaging in fraud, and that his accumulation of $466,00 during the Second Case shows that he did not frustrate any creditors.

Danzik's arguments ignore the Bankruptcy Court's reasoning. The "manipulations" that the Bankruptcy Court references are Danzik's bankruptcy filings in response to the CWT Parties' actions. It is axiomatic that the imposition of the automatic stay (*see* 11 U.S.C. § 362(a)) frustrated the CWT Parties' efforts to obtain and collect on their (nondischargeable) judgment. Further, Danzik filed the Bankruptcy Case immediately after the CWT Parties garnished his bank account after the Second Case was dismissed. Danzik's arguments ignore these actions, which show that his intent was not to pay creditors or obtain a discharge but to frustrate the CWT Parties. The fact that Danzik accumulated cash and may have also inconvenienced other creditors is irrelevant. The Court should disregard Danzik's arguments under this factor and find that the Bankruptcy Court correctly found that Danzik's manipulations in repeatedly filing bankruptcy frustrated the CWT Parties.

Factor 2 is the absence of an attempt to pay creditors.  The Bankruptcy Court found that "[d]uring the entire time [Danzik] was a Chapter 11 Debtor-in-possession, creditors did not receive any payment.  [Danzik] has not attempted to pay the Internal Revenue Service, CWT Parties or other secured or unsecured creditors."  (App. at 110.)  Nevertheless, Danzik argues that he did attempt to pay creditors because he accumulated cash during the Second Case.  Danzik's Brief at 17.

Danzik again ignores the Bankruptcy Court's analysis.  The detriment to creditors was two lengthy chapter 11 bankruptcy cases in which creditors received nothing on their claims.  The fact that Danzik accumulated cash is irrelevant – cash on the books is not payment to creditors.

Danzik makes the same argument with respect to factor 6: "[w]hether Debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors."  Danzik's Brief at 17 ("How is this accumulation a detriment to creditors?").  Danzik argues that this factor does not show bad faith because he accumulated cash during the Second Case.

Again, Danzik ignores the Bankruptcy Court's Ruling, in which it noted that during Danzik's time in and out of bankruptcy, creditors did not receive "payments on their claims for at least 41 months. . . . Creditors' claims are on hold while Debtor parks in bankruptcy."  (App. at 110.)  The Court should reject Danzik's

argument that factor 4 and factor 6 do not show bad faith because he accumulated cash during his Second Case.

Factor 14 is whether Danzik failed to make candid and full disclosure. The Bankruptcy Court concluded that Danzik failed to make a candid and full disclosure because he stated different asset values in the Bankruptcy Case than in his prior filings and, contrary to his argument at the Hearing, the Internal Revenue Service's Proof of Claim showed that he had not filed his tax returns. (App. at 112–13.) Danzik argues that this was error because he updated his asset values to present value and has filed his tax returns. Danzik's Brief at 18, 20.

Danzik misreads the Bankruptcy Court's findings under factor 14. The Bankruptcy Court relied on these very inconsistencies in ruling that factor 14 "weighs in favor of the CWT Parties." (App. at 113) ("The inconsistencies and failure to fully disclose . . . leave the court wondering . . . ."). Given Danzik's history before both the Bankruptcy Court and the New York court, he should not be surprised that his assertions are no longer given substantial weight in light of contrary documents. In short, the Bankruptcy Court doubted Danzik's disclosure and veracity based on the inconsistencies between his testimony and the Internal Revenue Service Proof of Claim and between his schedules. Danzik did not dispute that these inconsistencies were present. The Bankruptcy Court did not

abuse its discretion in concluding that these inconsistencies weighed in favor of a finding of bad faith.

Finally, factor 16 is "[w]hether there are multiple bankruptcy filings or other procedural gymnastics." The Bankruptcy Court found that "Debtor filed three bankruptcy cases in the District of Wyoming and one in the District of Arizona in the past three and one-half years." (App. at 111.) Danzik argues that this finding is wrong because RDX Technologies Corporation (the company that Danzik used to steal the CWT Parties' tax credits) (App. at 20), not Danzik, filed Bankruptcy in Arizona. Danzik's Brief at 17–18. Whether Danzik filed (or caused to be filed) three or four bankruptcies is immaterial.

Danzik does not challenge the Bankruptcy Court's finding on the other factors: that he filed the Bankruptcy Case in response to a judgment in pending litigation, that he employed a deliberate and persistent patter of evading a single major creditor, that using chapter 7 was an unfair end run around the Bankruptcy Court's rulings, and that he transferred assets by improperly converting the tax credits. (App. at 111–12.) These undisputed findings, along with the factors discussed above, show that the Bankruptcy Court did not abuse its discretion in concluding that Danzik filed the Bankruptcy Case in bad faith.

### B. Totality-of-the-Circumstances without Application of the 16 Factors.

The Eleventh Circuit has rejected the 16-factor test in favor of a general "totality-of-the-circumstances approach." *Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1271 (11th Cir. 2013). "The totality-of-the-circumstances inquiry looks for atypical conduct that falls short of the honest and forthright invocation of the [Bankruptcy] Code's protections." *Id.* (alteration in original) (citations and internal quotation marks omitted). This analysis examines a debtor's intentions and whether the filing is "inconsistent with the purposes of the Bankruptcy Code or is an abuse of the bankruptcy system." *Id.* (internal quotation marks omitted) (*quoting* Black's Law Dictionary 159 (9th ed. 2009)); *see also Asociación de Titulares de Condominio Castillo v. DiMarco* (*In re Asociación de Titulares de Condominio Castillo*), 581 B.R. 346, 362 (B.A.P. 1st Cir. 2018) (internal quotation marks omitted) ("[W]hen a bankruptcy serves no purpose, results in no benefit for its creditors or the debtor, and only delays litigation already pending against the debtor, there is cause to dismiss the case.").

Danzik argues in the alternative that, if the Court rejects the 16-factor test like the Eleventh Circuit, he did not file in bad faith. Danzik makes three arguments under this general totality-of-the-circumstances approach. First, Danzik argues that he fulfilled his duties as a debtor by attending hearings and filing the required documents and so he has not engaged in conduct outside of the norm for

those seeking bankruptcy relief.  Danzik's Brief at 20.  Second, Danzik argues that

his bad faith in his prior filings does not necessarily mean that he filed the

Bankruptcy Case in bad faith.  *Id.*  Third, Danzik argues that the Bankruptcy Court

erred in finding that he does not have assets available for distribution to unsecured

creditors.  Danzik's Brief at 20–21.  The CWT Parties will address these arguments

in turn and show that the Bankruptcy Court did not commit clear error in making

the fact findings that Debtor challenges.

First, the fact that Danzik fulfilled his duties to file required documents and

attend hearings does not outweigh his bad faith conduct.  These actions are

prerequisites for appearing before the Bankruptcy Court and are not the "acts or

omissions that constitute a misuse or abuse of the provisions, purpose or spirit of

the code."  *In re Piazza*, 719 F.3d at 1272 (internal quotation marks omitted).  The

relevant "acts or omissions" are, among other things, Danzik's repeated chapter 11

filings to delay the CWT Parties' collection actions.  That Danzik filed required

documents and attended hearings carry little, if any, weight.

Second, Danzik argues that his bad faith in his prior filings does not

necessarily mean that he filed the Bankruptcy Case in bad faith.  Danzik states that

his prior bankruptcy filings were dismissed for "reasons that bordered upon bad

faith."  This is a misstatement.  Danzik's prior cases were dismissed for bad faith,

along with other reasons.  (App. at 105) ("This court found 'cause' to dismiss the

First Case under Section 1112(b) based on the following . . . 5) Debtor lacked good

faith in filing and administering the case."); (App. at 105–06) ( The CWT Parties

moved to dismiss the Second Case . . . . the court found the CWT Parties showed:

Debtor . . . 3) filed this case in bad faith.").  Danzik asserts, without authority, that

these findings of bad faith are not grounds to dismiss the Bankruptcy Case because

they were associated with prior filings.  Danzik's argument ignores the facts and

circumstances underlying the Bankruptcy Court's findings that Danzik was "using

the breathing space to avoid his financial obligations," (App. at 106), and that his

"circumstances have not changed[,] [t]he CWT litigation continues, and Creditors'

claims are on hold while Debtor parks in bankruptcy." *Id.*  These are precisely the

same facts that support the Bankruptcy Court's finding of cause to dismiss the

Bankruptcy Case.  *See In re Stockwell*, 579 B.R. 367, 373 (Bankr. E.D.N.C. 2017)

(refiling soon "on the heels of" dismissal shows bad faith).

Similarly, Danzik argues that multiple bankruptcy filings are "not

necessarily grounds for dismissal."  Danzik's Brief at 20.  Although this is

technically correct, multiple filings—and Danzik's actions in those previous

cases—may show bad faith.  "A debtor's pre-petition conduct is relevant to a

court's good faith analysis. This includes, among other things, the debtor's past

bankruptcy filings." *In re Brown*, 399 B.R. 162, 169 (Bankr. W.D. Va. 2009)

(internal quotation marks and citation omitted) (analyzing whether a debtor's bad

faith in filing was "cause" under § 1307(c)).  Danzik's arguments about what is not

"necessarily" cause to dismiss ignores the Bankruptcy Court's repeated finding

that Danzik had abused bankruptcy protection to delay the CWT Parties efforts to

collect their nondischargeable judgment against Danzik.  The Court should look to

the substance of these issues and reject Danzik's arguments.

Third, Danzik argues that he has assets available for unsecured creditors.

When it dismissed the Second Case, the Bankruptcy Court found that there would

be no assets for a trustee to administer.  (App. at 5.)  The Bankruptcy Court

reiterated this finding in the Ruling. (App. at 114.)  Danzik argues that these

findings are wrong.  In particular, Danzik argues that the following assets would be

available: the $457,057.36 in his debtor-in-possession checking account when the

Bankruptcy Court dismissed the Second Case, his allegedly $1 million home,

millions in promissory notes that will be funded after the Canada litigation is

resolved, and two batmobiles—a modified 1977 Lincoln Continental and a

modified 1989 Chevrolet Caprice (the "Batmobiles").  Danzik's Brief at 20–21.

The Bankruptcy Court disregarded Danzik's argument because he failed to

provide consistent or reliable evidence to show that the assets (1) actually exist, (2)

have value, and/or (3) are unencumbered and available to pay claims of unsecured

creditors.  The CWT Parties dispute that the $457,057.36 would be estate property

because the funds are, at a minimum, proceeds of the stolen tax credits and subject

to the CWT Parties' interest.  (App. at 107.)  Danzik presented nothing to the

Bankruptcy Court about his home's value and did not submit the alleged

promissory notes into evidence.  Danzik testified that the Batmobiles are worth $1

million, despite valuing them at $435,000.00 total on his schedules.  (App. at 112

& n.40.)  And finally, Danzik provided no analysis to show what he thinks would

be left for distribution to unsecured creditors after paying the IRS secured tax

claim.  Danzik's Brief at 20–22.  In light of this inconsistent or nonexistent

evidence, the Court cannot find that the Bankruptcy Court clearly erred in finding

that "the realistic results of his chapter 7 is to only pay the Internal Revenue

Service tax liability."  (App. at 114.).

Most importantly, Danzik filed for an improper, non-economic purpose—to

delay the CWT Parties' efforts to collect on their nondischargeable $7 million

judgment.  *See In re Bushyhead*, No. 15-CV-89-JED-PJC, 2016 U.S. Dist. LEXIS

186308, at *23 (N.D. Okla. May 25, 2016) ("[P]ermitting dismissal for conduct

evidencing 'noneconomic motives,' . . . most closely adheres to the Congressional

purpose of § 707(a).").  The Fifth Circuit has noted that such conduct shows a non-

economic motive and is cause to dismiss:

> [T]he record is replete with evidence that Krueger filed bankruptcy for
> illegitimate purposes . . . .  Krueger offered little evidence besides his
> own testimony to contravene the strong evidence of his machinations
> and the bankruptcy court explicitly found he lacked credibility. . . . His
> duplicitous behavior is exactly the sort of conduct contemplated by
> most courts as giving cause for dismissal under § 707(a).

*Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 374 (5th Cir. 2016).

Here, Danzik's repeated statements about wanting an "orderly distribution"
is inconsistent with (1) his dishonest litigation practice before the New York court,
(2) his two chapter 11 filings which accomplish nothing except delay; and (3) his
testimony that he filed the Bankruptcy Case to frustrate the CWT Parties' efforts to
enforce their rights against him.  (App. at 75.)  The Bankruptcy Case was the next
step in Danzik's effort to delay.  Thus, even without considering the 16 factors, the
Court should find that the Bankruptcy Court did not abuse its discretion in finding
that Debtor filed the Bankruptcy Case in bad faith.

### III.   The Bankruptcy Court Did Not Abuse Its Discretion in Dismissing the Bankruptcy Case with Prejudice.

Danzik identifies one of the issues on appeal as: "Did the bankruptcy court
err finding such bad faith or fault as to legally prejudice refiling for 180 days?"
Danzik's Brief at 5.  As noted above, Danzik provides no argument or authority to
this Court to support his assertion that the Bankruptcy Court erred in ruling that
Danzik was barred from refiling for relief under the Bankruptcy Code for 180
days.  Because Danzik inadequately briefed this issue, he has waived it.  *See
United States v. Yurek*, 925 F.3d 423, 436 n.10 (10th Cir. 2019) ("Arguments
inadequately briefed in the opening brief are waived.").  Nevertheless, even if the
Court reaches this issue, it should affirm.

The Bankruptcy Code provides:

> Unless the court, **for cause**, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a).

Conduct showing "cause" to bar future filing under § 349(a) is determined by two factors "whether (1) the debtor demonstrated bad faith or defiance, and (2) whether the debtor's conduct was abusive or prejudicial to creditors." *In re Norton*, 319 B.R. 671, 681 (Bankr. D. Utah 2005). In assessing "whether the debtor demonstrated bad faith or defiance":

> Some courts have referred to this conduct as "contumacious" or a "pattern of evasion." This Court also chooses to label this conduct as defiant. The word "defiant" is defined as "bold resistance to an opposing force or authority." Although successive filings do not necessarily constitute defiant conduct, multiple filings may be evidence of such conduct, as is a debtor's continued failure to actively prosecute her bankruptcy cases.

*Id.* at 682–83. And in assessing "whether the debtor's conduct was abusive or prejudicial to creditors":

> A creditor is prejudiced when a debtor, through repeated filings, denies the creditor the opportunity to exercise its contractual rights because of the automatic stay. Abusive serial filing not only denies the creditor

certain rights, it allows a "rapacious" debtor to use the automatic stay
as a sword against its creditor: this is not the purpose of § 362.

*Id.* at 683–84.  Bankruptcy Courts within the Tenth Circuit have followed this

language and analysis.  *See, e.g.*, *In re Hancock*, No. 15-10037-JDL, 2015 Bankr.

LEXIS 874, at *17–19 (Bankr. W.D. Okla. Mar. 19, 2015); *In re Guebert*, No. 07-

41165, 2008 Bankr. LEXIS 1093, at *25–27 (Bankr. D. Kan. Apr. 11, 2008).

First, Danzik exhibited bad faith as described in Part II, *supra*.  In addition,

Danzik has repeatedly defied the Bankruptcy Court, which dismissed the First

Case because (1) Danzik was unable to effectuate a plan; (2) there was substantial

or continuing loss to or diminution of the estate with no reasonable likelihood of

rehabilitation; (3) Danzik had failed to meet filing and reporting requirements; (4)

Danzik had failed to pay taxes; and, (5) Danzik lacked good faith in filing and

administering the case.  Nevertheless, even though there had been no change in

circumstances, Danzik filed the Second Case.  The Bankruptcy Court dismissed the

Second Case for largely the same reasons as the First Case.  Then, after denying

Danzik's motion to convert the case instead of dismissing it, Danzik filed the

Bankruptcy Case.  This conduct shows bad faith and willful defiance of the

Bankruptcy Court's multiple orders that dismissal, not conversion, was in

creditors' best interest.

Second, Danzik's conduct was abusive and prejudicial to creditors.  Danzik

enjoyed bankruptcy protection for years—and always filed in response to the CWT

Parties' collection actions—without prosecuting a plan.  Thus, his conduct was abusive and prejudicial to creditors.  *In re Norton*, 319 B.R. at 684 ("The failure to file a plan and the timing of each filing demonstrates that this Debtor has not attempted to adjust and repay her debts as Chapter 13 contemplates.  Rather, it demonstrates that she has abused the purposes of the automatic stay . . . her 'sole purpose has been to frustrate and delay her creditors.'").

In sum, Danzik has shown no hesitation about repeatedly filing bankruptcy cases without intending to follow through on them—including prolonging two chapter 11 cases to bad faith dismissals without any effort to pay creditors—and filing the Bankruptcy Case days after his previous bankruptcy was dismissed.  Like the debtor in *Norton*, "[t]his Debtor has systematically manipulated the bankruptcy system and used it as her own personal shield from creditors' collection efforts." *Id.*  The Bankruptcy Court did not abuse its discretion in dismissing the Bankruptcy Case with prejudice.

## CONCLUSION

For the foregoing reasons, the CWT Parties respectfully request that the Court affirm the Bankruptcy Court's Ruling and Judgment.

Respectfully submitted this 16th day of October, 2019.

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By:  */s/ Bradley T. Hunsicker*

Bradley T. Hunsicker (WY Bar No 7-4579)
106 East Lincolnway Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com

*Counsel for CWT Canada II Limited
Partnership and Resource Recovery
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **APPELLEE'S BRIEF** was served *as indicated* on October 16, 2019, upon the below-named party:

**Via Electronic Notice**
Ken McCartney
bnkrpcyrep@aol.com

*/s/ Bradley T. Hunsicker*
Bradley T. Hunsicker

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because it contains 7,626 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because it has been prepared in a proportionally-spaced typeface in 14-point font.

*/s/ Bradley T. Hunsicker*