

FILED

9:20 am, 1/28/20

**Margaret Botkins
Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

In re:

DENNIS MEYER DANZIK,

          Debtor.

 

DENNIS MEYER DANZIK,

          Appellant,

vs.

CWT CANADA II LIMITED
PARTNERSHIP and
RESOURCE RECOVERY
CORPORATION,

          Appellees.

Case No. 19-CV-136-F

---

## ORDER ON APPEAL

This matter is before the Court on Appellant's *Notice of Appeal* (CM/ECF Document (Doc.) 1), *Appellant's Opening Brief*, filed by Dennis Meyer Danzik (Doc. 8), and *Appellees' Brief*, filed by CWT Canada II Limited Partnership and Resource Recovery Corporation (Doc. 9).

On March 12, 2019, Appellant ("Danzik") filed for bankruptcy in Chapter 7. (Doc. 2, at 3). Shortly thereafter, on March 20, 2019, Appellant's creditors (Appellees) ("the

CWT Parties") moved to dismiss Appellant's Chapter 7 case, and the Bankruptcy Court for the District of Wyoming, the Honorable Cathleen D. Parker presiding, held a hearing on the matter on May 15, 2019. (*Id.* at 8). On June 24, 2019, the Bankruptcy Court granted Appellees' motion to dismiss Appellant's Chapter 7 case with prejudice and imposed a 180-day bar to refiling. (*Id.* at 24, 25). Appellant files this appeal seeking reversal or remand of the Bankruptcy Court's ruling and judgment. (Doc. 8).

## JURISDICTION

Pursuant to 28 U.S.C. § 158(a), (c)(1) and Rule 8005(a) of the Federal Rules of Bankruptcy Procedure, Appellant has elected to have this appeal heard by the United States District Court, rather than by the Bankruptcy Appellate Panel. FED. R. BANKR. P. 8005(a). Appellant timely filed his Notice of Appeal on June 27, 2019 (Doc. 1), pursuant to Rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 8002, 8003. Therefore, the Court has jurisdiction over this appeal.

## BACKGROUND

This appeal is predicated on a larger dispute among the parties regarding the ownership of certain tax credits. As a result of prior litigation among the parties on this dispute, the CWT Parties claim entitlement to a judgment against Danzik in the amount of $7,033,491.13. (Doc. 2, at 12) (citing *Gem Holdco LLC, et al. v. Changing World Tech., L.P., et al.*, Index No. 650841/2013 (N.Y. Sup. Ct. 2013)). The CWT Parties have been unable to execute on this judgment due to Danzik's series of bankruptcy filings over the last several years, which the CWT Parties allege to have had the effect of staying execution on the judgment. (Doc. 10, at 92). Much, if not most, of the parties' prior litigation falls

outside the scope of this appeal.  However, the Court finds it helpful to recount the relevant facts to the history of this case, as generally represented in the record, as follows.[1]

In March 2013, Danzik was serving as CEO to RDX Technologies Corp. ("RDX"), a Canadian corporation.  (Doc. 10, at 56).  In March 2013, RDX acquired a refinery in Missouri from Canada II Limited Partnership and Resource Recovery Corporation.  (*Id.* at 56, 79).  At the time of the acquisition, the parties believed that, through special technology with which it was equipped, the refinery would be successful in converting waste grease into biofuel. (*Id.* at 56–57, 79).  If the refinery operated as predicted, the production of this biofuel would qualify the refinery for the receipt of IRS tax credits, subject to meeting standards set by the EPA.  (*Id.* at 57–58).  The refinery did not produce to this standard. (*Id.* at 58–61).  Nonetheless, RDX apparently received a number of tax credits.  (*Id.* at 66–67).  The CWT Parties claimed entitlement to the sum of those tax credits, pursuant to the refinery purchase agreement.  (Doc. 2, at 9–10).  However, it is agreed that the CWT Parties never received these credits, as a result of either Danzik's theft of the credits, or because they were expended in the course of RDX's operations.  (Doc. 10, at 66).

Eventually, litigation between Danzik and the CWT parties arose over the disputed tax credits in the Supreme Court of the State of New York, County of New York, Commercial Division.  (Doc. 2, at 11) (citing *Gem Holdco LLC, et al. v. Changing World*

---

[1] Although the parties generally appear to be in agreement as to the objective factual and procedural occurrences leading up to this appeal, Danzik does not cite to the record to support most of the allegations of error he directs to the Bankruptcy Court.  Even in broad review of the parties' designation of the record, the Court does not perceive factual support for many of Danzik's contentions, such as his assertions that the Bankruptcy Court erroneously attributed other bankruptcy proceedings to Danzik, that it erred when it found Danzik had failed to file certain tax returns, or that it erred in the valuation of certain estate assets.

*Tech., L.P., et al.*, Index No. 650841/2013 (N.Y. Sup. Ct. 2013)).  On January 3, 2016, the New York court ruled in favor of the CWT Parties, finding that neither Danzik nor RDX were entitled to the tax credits, and held a hearing to discuss whether Danzik should be held in civil and/or criminal contempt for his failure to return the credits.  (*Id.* at 12).  The following day, on January 4, 2016, Danzik filed his first bankruptcy case under Chapter 11 in the Bankruptcy Court for the District of Wyoming ("First Case").  (*Id.*) (citing *In re Danzik*, Case No. 16-20002 (Bankr. D. Wyo. 2016)).   Danzik's filing of his First Case prompted an automatic stay on the proceedings in the New York court, temporarily obstructing the court from entering a formal judgment against Danzik, eventually entered in the amount of $7,033,491.13.  (*Id.*).

Additionally, at some point following the failure of the refinery, it also appears that Danzik filed suit against the CWT Parties in Canada, alleging theories of breach of contract in the purchase agreement for the refinery.   This litigation remains pending. Danzik estimates the value of this lawsuit as approximately $90 million USD, although he apparently failed to provide corroborating documents to the Bankruptcy Court to support his "speculation."  (Doc. 2, at 20; Doc. 10, at 80).

In 2017, the Bankruptcy Court dismissed Danzik's First Case.  In dismissing that case, the Bankruptcy Court found cause for dismissal under 11 U.S.C. § 1112(b), specifically that: (1) Danzik was unable to effectuate a plan; (2) there was substantial or continuing loss to or diminution of the estate, without reasonable likelihood of rehabilitation; (3) Danzik did not fulfill his filing and reporting requirements; (4) Danzik failed to pay taxes; and (5) Danzik lacked good faith in filing and administering his case,

as required under Chapter 11.  (Doc. 2, at 12) (citing *Order on Sigma Opp. Fund II, LLC's Motion to Dismiss, In re Danzik*, Case No. 16-20002, Doc. 393 (Bankr. D. Wyo., March 8, 2017)).  The Bankruptcy Court specifically found it was in the best interest of the estate to dismiss Danzik's case, rather than convert it to Chapter 7. (*Id.*).

Nine months following the Bankruptcy Court's dismissal of Danzik's First Case, Danzik filed a second Chapter 11 petition in the Bankruptcy Court ("Second Case").  (*Id.*) (citing *In re Danzik*, Case No. 17-20934 (Bankr. D. Wyo., Dec. 6, 2017)). The CWT Parties again moved to dismiss this case, on which motion the Bankruptcy Court determined "[Danzik] 1) is grossly mismanaging the estate by failing to timely file monthly operating reports, 2) is not able to effectuate a confirmable plan; and 3) filed th[e] case in bad faith." (Doc. 2, at 12–13) (citing *Decision Memorandum on CWT's Motion to Dismiss, In re Danzik,* Bankr. Case No. 17-20934, Doc. 201 (Bankr. Dist. Wyo., Feb. 6, 2019)).  The court added, "[Danzik is using the breathing space [of bankruptcy protection] to avoid his financial obligations.  He has not argued nor demonstrated he is using it to rehabilitate any business. . . The CWT litigation continues, and Creditors' claims are on hold while [Danzik] parks in bankruptcy."  (*Id.*). Again, the Bankruptcy Court determined Danzik's case should be dismissed, rather than converted.  (*Id.*) (citing *Order Denying Motion to Alter or Amend Court's Order*, *In re Danzik*, Case No. 17-20934, Doc. 211, at 2 (Bankr. D. Wyo., March 8, 2019)).  Conversion, the Bankruptcy Court reasoned, would not serve any benefit to the estate or its creditors as "there were no assets to be distributed to creditors other than the IRS."  (Doc. 10, at 63).

On March 12, 2019, approximately one month after the Bankruptcy Court's

dismissal of Danzik's second Chapter 11 case, and just four days following the Bankruptcy Court's denial of Danzik's motion to amend judgment in that case, Danzik filed the Chapter 7 petition that forms the basis for this appeal.  (Doc. 2, at 3).  On March 20, 2019, the CWT Parties moved for dismissal of the Chapter 7 case, arguing that Danzik filed his Chapter 7 case in bad faith.  (*See* Doc. 10, at 4).  Additionally, the CWT Parties requested that Danzik be barred from refiling in bankruptcy for a period of 180 days.

The Bankruptcy Court, receiving Danzik's response and the CWT Parties' reply, held a hearing on May 15, 2019, at which Danzik offered exhibits and the witness testimony of himself; Anthony Ker, a business associate of Danzik; and Bill Hinz, a former employer.  (*See id.*, at 45).  The CWT Parties did not present evidence or witnesses.  (*See* Doc. 2, at 14).

After taking the matter under advisement, the Court issued its opinion on June 24, 2019, granting the CWT Parties' motion and ordering dismissal of the Chapter 7 case, with prejudice.  (Doc. 2, at 25).  In its *Memorandum*, the Bankruptcy Court stated, "Debtor has manipulated the bankruptcy system and used it as his own personal shield from creditors' collection efforts," ultimately concluding that Danzik had filed his Chapter 7 case in bad faith warranting dismissal with prejudice.  (*Id.* at 23).  The Bankruptcy Court also enjoined Danzik from refiling in bankruptcy for a period of 180 days, pursuant to its authority under 11 U.S.C. § 109(g).  (*Id.* at 25).  The essence of Danzik's appeal is to seek reversal or remand of the Bankruptcy Court's judgment.

## ISSUES ON APPEAL

On appeal of the Bankruptcy Court's decision, Danzik raises the following issues for this Court's review:

1.  Did the Bankruptcy Court err in finding that Danzik filed in such bad faith or fault as to justify dismissal of his Chapter 7 case?

2.  Did the Bankruptcy Court properly apply Chapter 7 dismissal law?

3.  Did the Bankruptcy Court err in finding such bad faith or fault as to legally prejudice Danzik from refiling for 180 days?

## STANDARD OF REVIEW

Matters of law are reviewed de novo, and factual findings by the Bankruptcy Court are reviewed for clear error. *In re C.W. Mining Co.*, 641 F.3d 1235, 1240 (10th Cir. 2011). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake has been made." *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996). Courts have described the standard of deference to a bankruptcy court's factual findings as follows:

> If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1241 (10th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985)). "[F]actual findings need not be correct, but we must uphold them if they fall within the range of permissible conclusions." *Id.*

(internal citations omitted). In reviewing findings of fact, the district court must afford due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *See* FED. R. BANKR. P. 8013 advisory committee's note.

Mixed questions of law and fact are reviewed "under the clearly erroneous or de novo standard, depending on whether the mixed question involved primarily a factual inquiry or the consideration of legal principles." *Armstrong v. C.I.R.*, 15 F.3d 970, 973 (10th Cir. 1994) (citation omitted).

Finally, determining whether cause exists to dismiss a case under Section 707(a) lies within the sound discretion of the bankruptcy court. The Bankruptcy Code does not define cause, but courts have agreed that, at a minimum, dismissal must not cause prejudice to creditors. *See, e.g., In re Asset Resolution Corp.*, 552 B.R. 856, 862 (Bankr. D. Kan. 2016); *In re Stephenson*, 262 B.R. 871, 874 (Bankr. W.D. Okla. 2001); *In re Stairs*, 307 B.R. 698, 703 (Bankr. D. Colo. 2004). Both a bankruptcy court's determination of what constitutes cause, as well as its ultimate decision to dismiss for cause under 11 U.S.C. § 707(a), are reviewed for abuse of discretion. *In re Krueger*, 812 F.3d 365, 369 (5th Cir. 2016); *In re Arenas*, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015); *In re Bushyhead*, No. 15-CV-89-JED-PJC, 2017 WL 1549467, at *1 (N.D. Okla. Apr. 28, 2017).

### DISCUSSION

Danzik's first issue for the Court's consideration is whether the Bankruptcy Court erred in finding that Danzik filed in "such bad faith or fault" that it was proper to dismiss his case. He contends that the Bankruptcy Court inaccurately determined that "bad faith" is grounds for dismissal of a Chapter 7 bankruptcy case and, even if such a basis for dismissal

were valid, the Court erred in its finding that Danzik filed in bad faith. The Court finds this issue shares significant overlap with Danzik's second issue as to whether the Bankruptcy Court properly applied "Chapter 7 dismissal law." Therefore, the Court shall consider these issues together, and separately evaluate the Bankruptcy Court's determinations of law as distinguishable from its findings of facts. Finally, the Court shall conclude with an analysis of whether the Bankruptcy Court abused its discretion in prejudicing Danzik from refiling in bankruptcy for a period of 180 days.

### a. Whether "Bad Faith" is a Valid Basis for Dismissing a Chapter 7 Bankruptcy Case for "Cause"?

Whether "bad faith" is a valid legal basis for dismissal of a Chapter 7 case is a question of law the Court reviews *de novo*. It is not definitively established, either by the applicable provisions of the Bankruptcy Code or the case law of the Tenth Circuit, that a debtor's filing of his Chapter 7 case in "bad faith" qualifies as grounds for dismissing his case. Pursuant to 11 U.S.C. § 707(a), which the Bankruptcy Court cited as authority for dismissing Danzik's case for "cause":

> The court may dismiss a case under a chapter only after notice and a hearing and only for cause, including—
>
> > (1) Unreasonable delay by the debtor that is prejudicial to creditors;
> >
> > (2) Nonpayment of any fees or charges required under Chapter 123 of Title 28; and
> >
> > (3) Failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a).

The plain language of the statute (*i.e.*, "including") reflects that the three enumerated

examples under § 707(a) are illustrative rather than exhaustive.  The legislative history of § 707(a) also supports this construction of the statute as providing a set of examples of what may constitute "cause," rather than exclusive circumstances.  *See In re Asset Resolution Corp.*, 552 B.R. 856, 862 (Bankr. D. Kan. 2016); *In re Cleland*, 150 B.R. 63, 65 (Bankr. D. Kan. 1992) (citing H.R. Rep. No. 95–595, at 380 (1977)).

Therefore, although "bad faith" is not an enumerated factor for finding cause under § 707(a), many courts have determined that a debtor's bad faith in filing a Chapter 7 case or lack of legitimate bankruptcy purpose constitute cause for dismissal.  Indeed, the majority of circuits officially recognize bad faith as a valid basis for dismissal of a Chapter 7 case.  *See Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018) ("For the most part, courts have recognized that a debtor's bad faith filing may constitute cause for dismissal under § 707(a). . . We think the majority view is the sounder one, because it is the most helpful in preventing serious abuses of the bankruptcy process."); *Krueger v. Torres*, 812 F.3d 365, 370 (5th Cir. 2016) ("This circuit joins those courts that have held a debtor's bad faith in the bankruptcy process can serve as the basis of a dismissal 'for cause.'"); *Piazza v. Nueterra Healthcare Physical Therapy, LLC*, 719 F.3d 1253 (11th Cir. 2013); *Tamecki v. Frank*, 229 F.3d 205, 207 (3rd Cir. 2000); *Indus Ind. Servs., Inc. v. Zick*, 931 F.2d 1124, 1126–27 (6th Cir. 1991). The Seventh Circuit has not adopted a bad faith analysis *per se* but has reached agreement "with the cases that allow 'for cause' to embrace conduct that, while not a violation of required procedures, avoids repayment of debt without an adequate reason."  *In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015).

The Eighth and Ninth Circuit have diverged from the majority view, finding that bad

faith is *not* a proper basis for dismissal under § 707(a). However, the Eighth Circuit's rejection of the majority approach was limited inasmuch as it still recognizes "extreme misconduct" as a basis for dismissal under a theory of bad faith.[2]

The Tenth Circuit Court of Appeals has not had opportunity to conclusively address whether a debtor's bad faith, by itself, is cause for dismissal. In ruling on the motion to dismiss, the Bankruptcy Court applied the approach followed by the majority of circuits, analyzing Danzik's alleged bad faith as a § 707(a) cause for dismissal. This is also the approach taken by a majority of sister courts within the Tenth Circuit. *See, e.g., In re Arenas*, 535 B.R. 845, 847 (10th Cir. B.A.P. (Colo.) 2015) ("Section 707(a)(1) allows a Chapter 7 case to be dismissed for cause, including unreasonable prejudicial delay to creditors. A debtor's conduct may demonstrate a lack of good faith that amounts to such cause."); *In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282, at *8 (Bankr. D. N.M. July 10, 2015); *In re Yim Kealamakia*, No. 12-31822, 2013 Bankr. LEXIS 2777, at *11 n.21 (Bankr. D. Utah July 9, 2013).

Despite the relative weight of case law favoring the majority approach, Danzik draws the Court's attention to two cases allegedly taking a contrary view. According to Danzik, *In re Bushyhead*, 525 B.R. 136 (Bankr. N.D. Okla. 2015) and *In re Etcheverry*, 221 B.R. 524

---

[2] The Eighth Circuit has held that while "some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith ... framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994). Citing *In re Kahn*, 172 B.R. 613 (Bankr. D. Minn. 1994), the *Huckfeldt* Court adopted a "narrow, cautious approach to bad faith," holding that bad faith under § 707(a) should be limited to "extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor or using bankruptcy as a refuge from another court's jurisdiction." *In re Huckfeldt*, 39 F.3d at 832 (citing *In re Kahn*, 172 B.R. at 624–26).

(Bankr. D. Colo. 1998) reject the majority rule.  Indeed, the *Bushyhead* bankruptcy court found, "There is no need for a court to step into the world of 'bad faith' in order to dismiss a case where a debtor has acted improperly in this case or a recently filed and dismissed case." *In re Bushyhead*, 525 B.R. 136, 151 (Bankr. N.D. Okla. 2015), *aff'd*, No. 15-CV-89-JED-PJC, 2017 WL 1549467 (N.D. Okla. Apr. 28, 2017).  Nonetheless, *Bushyhead* is of limited value to Danzik's position.  For instance, on appeal of that case, the United States District Court, Northern District of Oklahoma, observed:

> [T]he bankruptcy court did not completely reject bad faith as a cause for dismissal or state that bad faith conduct could never satisfy § 707(a). Instead, the court fully considered the facts relevant to the (Debtors) and determined that those facts did not constitute cause for dismissal under § 707(a).

*In re Bushyhead*, No. 15-CV-89-JED-PJC, 2017 WL 1549467, at *6 (N.D. Okla. Apr. 28, 2017).  Therefore, *Bushyhead* does not reject bad faith as a basis for dismissal under § 707(a).

Etcheverry* is more helpful to Danzik's position.   In that case, a United States Bankruptcy Court for Colorado declined to apply an analysis of bad faith, concluding:

> Congress had the opportunity to insert a "good faith" requirement into § 707(a) when it amended § 707(b) in 1986. 11 U.S.C. § 707(b) already contained a "substantial abuse" provision and Congress amended the section in 1986 to provide that the United States Trustees could initiate action under § 707(b). If Congress had wanted a "substantial abuse" provision in 707(a) they could have inserted it as they did in § 707(b), but they did not do so.

*In re Etcheverry*, 221 B.R. at 524–25.  Yet *Etcheverry* predates the Tenth Circuit Bankruptcy Appellate Panel's 2015 decision to the contrary (*In re Arenas,* 535 B.R. 845 (10th Cir. B.A.P. (Colo.) 2015)[3], and stands against the weight of law among bankruptcy courts in the Tenth

---

[3] Although the Bankruptcy Appellate Tribunal is a "subordinate tribunal whose rulings. . . are not entitled to deference," the Court does find the position of the Panel to have persuasive value. *In re Expert S. Tulsa, LLC*, 842 F.3d 1293, 1296 (10th Cir. 2016).

Circuit.  Further, it stands against the express recognition in § 707(a) that "cause" for dismissal *includes* the illustrations listed therein, rather than that list being exhaustive of the circumstances constituting "cause" for dismissal.

One of the principal goals of bankruptcy is to provide an "honest but unfortunate debtor" with a fresh start.  *Dalton v. Internal Rev. Serv.* (*In re Dalton*), 77 F.3d 1297, 1300 (10th Cir. 1996) ("The purpose of the Bankruptcy Code is to provide the honest, but unfortunate debtor a fresh start," quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). Whether a debtor has sought relief in bankruptcy in bad faith, without intention or ability to pay his creditors, is a consideration relevant to determining whether the Bankruptcy Code has been utilized for its intended purposes.  Ultimately, the Bankruptcy Court's analysis incorporated the correct statutory standard: whether "cause" existed for dismissal of this case. For these reasons, the Court concludes the Bankruptcy Court did not err in employing a bad faith analysis on the CWT Parties' motion to dismiss.

**b.  *Whether the Bankruptcy Court Erred in its Factual Determination that Danzik filed in Bad Faith?***

Finding no error in the Bankruptcy Court's conclusion of law regarding the availability of bad faith as a basis for dismissal under § 707(a), the Court next assesses whether the Bankruptcy Court erred in its factual findings that the circumstances in this case rose to the level of "cause" for dismissal.  As noted, the Court reviews the factual determinations of the Bankruptcy Court for clear error.  However, the bankruptcy court's determination of what constitutes cause, as well as its ultimate decision to dismiss for cause under 11 U.S.C. § 707(a), are reviewed for abuse of discretion.  *In re Krueger*, 812 F.3d 365,

369 (5th Cir. 2016); *In re Arenas*, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015); *In re Bushyhead,* No. 15-CV-89-JED-PJC, 2017 WL 1549467, at *1 (N.D. Okla. Apr. 28, 2017).

    i.    **Sixteen-Factor Test**

To determine whether Danzik's filings were in bad faith and, thus, whether cause existed for dismissal, the Bankruptcy Court conducted a totality-of-the circumstances inquiry consisting of sixteen (16) relevant factors. *See In re McGuire-Pike*, No. 14-13365 ta7, 2015 WL 4181019, at *5–6 (Bankr. D. N.M. July 10, 2015). Although the Bankruptcy Court framed its analysis in terms of Danzik's bad faith, the Court's analysis of these factors also caused it to necessarily consider whether creditors have been prejudiced by the filing, and whether they would be prejudiced by dismissal:

1) *Whether Danzik's manipulations, if any, had the effect of frustrating one particular creditor;*

2) *The absence of an attempt to pay creditors;*

3) *Debtor's failure to make significant lifestyle changes;*

4) *Whether Debtor has sufficient resources to pay a substantial portion of debts;*

5) *Whether Debtor inflated expenses to disguise financial well-being;*

6) *Whether Debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;*

7) *Whether Debtor reduced his creditors to a single creditor in the months prior to filing his petition;*

8) *Whether Debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;*

9)  *Whether Debtor filed the case in response to a judgment in pending litigation;*

10) *The unfairness of using Chapter 7;*

11) *Whether Debtor is paying debts to insiders;*

12) *Whether Debtor transferred assets;*

13) *Whether Debtor employed a deliberate and persistent pattern of evading a single major creditor;*

14) *Whether Debtor failed to make a candid and full disclosure;*

15) *Whether the debts are modest in relation to assets and income; and*

16) *Whether there are multiple bankruptcy filings or other procedural gymnastics.*

*See also In re Arenas*, 535 B.R. 845, 853 (10th Cir. B.A.P. (Colo) 2015).[4]

Even in cases where all sixteen factors may be relevant, "dismissal for 'cause' under 11 U.S.C. § 707(a) based on a debtor's lack of good faith must be reserved for truly egregious cases." *In re Quinn*, 490 B.R. 607, 618–19 (Bankr. D. N.M. 2012); *see also Zick,* 931 F.2d at 1129 (stating that dismissals for lack of good faith "must be undertaken on an *ad hoc* basis. [Dismissals for bad faith] should be confined carefully and generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and

---

[4] Although the Bankruptcy Court did not cite *In re Arenas* as authority for the court's invocation of the sixteen factors, the Bankruptcy Appellate Panel has suggested support for the type of factors the Bankruptcy Court considered here:

"Dismissal factors that are often considered are: the best interests of both debtor and creditors; trustee's consent or objection; potential to delay creditor payments; good or bad faith in seeking dismissal; and the possibility of payment priority becoming reordered outside of bankruptcy. Emphasis is typically given to any prejudice that dismissal might cause the estate's creditors."

*Id.* at 853 (quoting *In re Isho*, Nos. UT–12–090, 11–30284, 2013 WL 1386208, at *3 (10th Cir. B.A.P. April 5, 2013)).

excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.") (internal citation omitted).  The Court finds no abuse of discretion in the Bankruptcy Court's consideration of these factors for determining whether there was "cause" to dismiss Danzik's Chapter 7 petition.

At the trial level, the CWT Parties argued that a balance of the first, second, sixth, ninth, thirteenth, and sixteenth factors counseled in favor of dismissal.  The Bankruptcy Court agreed, but also found the fourth, tenth, twelfth, fourteenth, and fifteenth factors relevant to the disposition of the motion to dismiss.  The Court reviews the Bankruptcy Court's factual findings under each factor for clear error.

### 1.  Whether Danzik's manipulations, if any, had the effect of frustrating one particular creditor?

Under the first factor, the Bankruptcy Court found that Danzik had filed this case primarily to prompt an automatic stay on the CWT Parties' attempts to execute on their judgment. To support this finding, the Bankruptcy Court emphasized the following facts from the history of this case and Danzik's other bankruptcy filings:

> Debtor filed the First Case during the pendency of contempt proceedings in the New York court against Debtor in favor of the CWT Parties.  The CWT Parties pursued Debtor throughout his bankruptcy cases, here and in Arizona. Debtor filed his second case shortly after the CWT Parties took steps to enforce the contempt order. Debtor filed Chapter 7 after the CWT parties attempted to collect on its judgment.

On these facts, it was reasonable for the Bankruptcy Court to conclude that Danzik's enjoyment of the automatic stays during his bankruptcy filings affected the CWT Parties'

ability to collect on the judgment, or even that Danzik had calculated his filings to produce this effect.  In light of this timing, the Court is not persuaded by Danzik's argument that the Bankruptcy Court's findings were in error because other creditors were similarly frustrated by the imposition of the stay.  (Doc. 8, at 16–17).  It is also irrelevant that Danzik may have accumulated additional assets in the duration of his Second Case (a contention, which in addition to being irrelevant, is not supported by any evidence in the record).

Accordingly, the Court does not find clear error in this finding.

2. ***The absence of an attempt to pay creditors.***

Reviewing the case under the second factor, the Bankruptcy Court next found that Danzik did not disburse payment to any creditors of the estate, including the CWT parties, during either of his Chapter 11 cases, or his Chapter 7 case.   Danzik's creditors—including the CWT Parties—did not receive payment for a total of at least 41 months during the pendency of his cases. (Doc. 2, at 17).  During Danzik's Second Case, he did not even attempt to file a plan, and instead "opted out" of this essential Chapter 11 function.  (*Id*.).

Regarding this factor, Danzik again alleges error in the Bankruptcy Court's failure to consider Danzik's "accumulation of $466,000 in a short fifteen months, designat[ed] for use in paying creditors."  Again, this contention that Danzik had used the relief of automatic stays is without citation to, or support in, the record.  Even if valid, Danzik's accumulation of assets does not alter the fact that he never attempted to pay his creditors and/or file any kind of plan toward the goal of repayment.

Danzik's brief also appears to argue that Danzik does intend to pay his creditors, including the CWT Parties, upon resolution of the pending litigation in Canada regarding

damages for alleged misrepresentations made in the contract for the sale of the refinery. To this end, a generous interpretation of Danzik's position is that he seems to have viewed the automatic stays of bankruptcy as the vehicles for him to wait out this lawsuit to the eventual benefit of his creditors. However, the facts remain that the CWT Parties have not received any payment whatsoever, and there is nothing to demonstrate that Danzik has attempted to provide any. In light of this reality, it was reasonable for the Bankruptcy Court to conclude this factor weighed in favor of the CWT Parties.

4. ***Whether Debtor has sufficient resources to pay a substantial portion of debts?***

The Bankruptcy Court determined this factor to be one relevant factor weighing in favor of Danzik against dismissal. Indeed, at the time of the hearing, "[t]he majority of Debtor's assets [were] tied up in promissory notes RDX Technologies owes to Debtor." (*Id.*, at 20). But, without success in his pending lawsuit in Canada, Danzik will not be able to "pay a substantial portion of his debts given the large judgments against him." (*Id.*). The Court finds the Bankruptcy Court did not err in its factual determinations under this factor, and that it gave this factor appropriate weight.

6. ***Whether Debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors?***

As previously noted, during the pendency of Danzik's Chapter 11 cases, his creditors did not receive payment for at least forty-one (41) months. As counsel for the CWT Parties argued on behalf of his client at the hearing, "because of the automatic stay, our hands are tied. As soon as our hands are untied and we make progress [on collecting the judgment], they get tied again with the automatic stay." (Doc. 10, at 101).

The effect of Danzik's serial bankruptcy filings has been to obstruct the CWT Parties' diligent efforts to collect on the judgment of the New York Court, without prospect of repayment through bankruptcy proceedings.   On these facts, the Bankruptcy Court reasonably concluded the sixth factor weighed in favor of the CWT Parties.

9. ***Whether Debtor filed the case in response to a judgment in pending litigation?***

As noted above with regard to the first factor, each of Danzik's bankruptcy filings, including his Chapter 7 case, appear to have arisen in response to the CWT Parties' attempts to collect on the judgment of the New York court.   The timing of Danzik's filings, alone, appears to be a sufficient basis on which the Bankruptcy Court could find this factor to weigh in favor of the CWT Parties.

10. ***The unfairness of using Chapter 7.***

Although the CWT Parties did not argue this factor, the Bankruptcy Court determined it was relevant to its bad faith inquiry.   The Court observed:

> Debtor had two Chapter 11 cases dismissed and never asserted conversion in the creditors' and the estate's best interest, but shortly thereafter filed this Chapter 7 case.   After filing the Chapter 7 case, the court denied Debtor's request to extend the stay finding it is unfair to creditors to allow Debtor to use Chapter 7 to make an 'end run' around the court's previous orders.

(Doc. 2, at 19).

Indeed, the Bankruptcy Court had previously determined that Chapter 7 would serve no comprehensible purpose for the administration of the estate, as there "were no assets to be distributed to creditors other than the IRS. So there was no purpose to remain in bankruptcy." (Doc. 10, at 63–64).  Indeed, "when a bankruptcy serves no purpose, results in no benefit for its creditors or the debtor, and only delays litigation already pending against

the debtor, there is cause to dismiss the case." *Asociación de Titulares de Condominio Castillo v. DiMarco (In re Asociación de Titulares de Condominio Castillo)*, 581 B.R. 346, 362 (B.A.P. 1st Cir. 2018).

Here, the Bankruptcy Court had a sufficient basis on which to conclude Danzik's filing under Chapter 7 was unfair to the CWT Parties, as the only purpose of this filing appears to have been to obstruct collection on the judgment, in light of the Bankruptcy Court's previous determination that conversion of the Chapter 11 cases would not benefit the creditors. Thus, the Bankruptcy Court did not err when it found that this factor weighed in favor of the CWT Parties.

### 13. *Whether Debtor employed a deliberate and persistent pattern of evading a single major creditor?*

In light of the Bankruptcy Court's findings under the first and ninth factors, including the timing and number of Danzik's multiple filings, the Bankruptcy Court had an ample basis on which to conclude that this factor weighed in favor of the CWT Parties.

### 16. *Whether there are multiple bankruptcy filings or other procedural gymnastics?*

Regarding the thirteenth factor, the Bankruptcy Court found that Danzik "employed a deliberate and persistent pattern of evading the CWT Parties." (Doc. 2, at 18). The record supports this conclusion. Since he filed his First Case in 2016, Danzik's filings have shortly followed the entry of judgments in litigation against him. Although "procedural gymnastics" is a term wanting of precision and has not been defined with any clarity by courts that have previously considered this factor, it is not disputed that Danzik filed three bankruptcy cases within four years. Therefore, it was reasonable for the Bankruptcy Court to conclude that

this factor weighed in favor of the CWT Parties.

14. ***Whether Debtor failed to make a candid and full disclosure.***[5]

The CWT Parties did not cite this factor, but the Bankruptcy Court determined it was also relevant to the analysis of the motion. The Bankruptcy Court noted its concern "about Debtor's veracity disclosing information." (Doc. 2, at 19).  Indeed, there is striking contrast between Danzik's valuation of his property in his Chapter 11 suit, versus his valuation of the same property in the Chapter 7 case.  For instance, Danzik estimated his Bentley Arnage to be worth $76,300.00 when he filed under Chapter 11, but only $35,000.00 when he filed under Chapter 7.  (*Id.*).  Danzik's other property valuations for his Chapter 7 depart from his estimates under Chapter 11 by $10,000 to $1,000, while several items of property are excluded entirely.  (*Id.*).  Moreover, the Court determined that, despite Danzik's representation that he had filed tax returns throughout his filings, evidence at the hearing showed that Danzik failed to file returns, either by omission or insufficient documentation, in 2016, 2017, and 2018.  (*Id.* at 20). The Court finds no error in the Bankruptcy Court's determination that this factor was relevant, and that it weighed in favor of the CWT Parties.

**ii.     Totality-of-the-Circumstances**

Finally, Danzik appears to contend that, even if bad faith were a legal basis on which to dismiss a case for cause pursuant to § 707(a), the Bankruptcy Court's application of the sixteen-factor test was in error.  Danzik's argument as to why the application of this test, as

---

[5] The Bankruptcy Court did not conduct a separate analysis on the twelfth factor (whether Debtor transferred assets), but noted that its findings under the fourteenth factor led the court to "wonder[] if the assets were. . . improperly transferred."  (Doc. 2, at 20).

opposed to another frame of analysis, is difficult to follow.  The Court's best comprehension of his position is that any totality-of-the-circumstances inquiry permits a bankruptcy judge too much discretion to supplant more reliable standards with her own subjective reasoning. Whether the Bankruptcy Court erred in finding cause to dismiss under the application of its sixteen-factor test is an issue reviewed for abuse of discretion.

Many bankruptcy courts have engaged in a version of the sixteen-factor test at issue here.  *See In re McGuire-Pike*, No. 14-13365 ta7, 2015 WL 4181019, at *5–6 (Bankr. D. N.M. July 10, 2015) (citing *In re Lombardo*, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007) (listing fourteen factors); *In re O'Brien*, 328 B.R. 669, 675 (Bankr. W.D.N.Y) (listing fourteen factors); *In re Quinn*, 490 B.R. 607, 618 (Bankr. D. N.M. 2012) (listing all sixteen factors but emphasizing the first six); *In re Baird*, 456 B.R. 112, 116–17 (Bankr. M.D. Fla. 2010) (listing fifteen factors).  Although courts have not consistently applied the same factors, each of the factors considered here by the Bankruptcy Court appears relevant to its inquiry into whether "injustice" or "unfairness" was caused by Danzik's conduct in bankruptcy, or whether there was evidence of a "misuse or abuse of the provisions, purpose, or spirit of the bankruptcy code."  *In re Bushyhead*, 525 B.R. 136, 146 (Bankr. N.D. Okla. 2015).  Here, there is no contention that the Bankruptcy Court's reliance on any single factor was the root of alleged error, as distinguishable from the cases on which Danzik supports his argument.  *See In re Bushyhead*, 525 B.R. 136 (Bankr. N.D. Okla. 2015) (holding that the ability of a debtor to repay pre-petition debt, *standing alone*, does not constitute cause for dismissal).  In this case, the Bankruptcy Court's analysis adequately sought to assess all relevant circumstances bearing on "cause" to dismiss, including Danzik's alleged bad faith,

but also the only realistic result of the Chapter 7 case would be continued harm to creditors.

Ultimately, with respect to bad faith, the Bankruptcy Court conducted a thorough review of the applicable law and applied the correct statutory standard, which is determining whether "cause" for dismissal existed under § 707(a). As noted, that standard is not defined in the Bankruptcy Code, and bankruptcy courts have discretion to determine what constitutes cause. *In re Arenas*, 535 B.R. at 853. In this case, as noted above, the Bankruptcy Court did not abuse its discretion in using the sixteen-factor test. It is accordingly not necessary for the Court to definitively conclude whether the sixteen-factor test applied in this case is the best, or only, test for assessing bad faith.

On balance of all factors which the Bankruptcy Court considered, the Court finds that the Bankruptcy Court properly classified this case as so egregious as to warrant dismissal on bad faith, alone. Moreover, its analysis illuminated that Danzik had not utilized Chapter 7 to further either of the Chapter's prevailing purposes, namely: to provide an honest debtor with a fresh start, and to facilitate the distribution of exempt, unencumbered assets to creditors. With regard to the first of these purposes, the Bankruptcy Court found the only realistic result of Danzik's Chapter 7 case would be the disbursement of payment to the Internal Revenue Service, one of Danzik's unsecured creditors. Although Danzik suggests the key to his desired fresh start is delay until such time his pending lawsuit in Canada is resolved, Danzik did not corroborate this speculation with either an estimate as to the value of the Canadian lawsuit or the likelihood of success. Ultimately, the Bankruptcy Court conducted a thorough analysis of all relevant factors and did not abuse its discretion when it determined Danzik's conduct in bankruptcy constituted cause for dismissal.

c. ***Whether the Bankruptcy Court erred in finding such bad faith or fault as to legally prejudice Danzik from refiling for a period of 180 days?***

Danzik's final argument involves his challenge to the Bankruptcy Court's imposition of a 180-day bar to refiling in bankruptcy, a sanction available to the Bankruptcy Court under § 109(g).  Danzik would also have the Court find that, even if dismissal was proper on the Bankruptcy Court's finding of bad faith, the Bankruptcy Court abused its discretion when it prejudiced Danzik from refiling for a period of 180 days.[6]  However, this argument is now moot.  The Bankruptcy Court entered its decision on June 24, 2019, and the 180-day bar therefore automatically expired by its own terms on December 21, 2019.  "Expiration of the 180-day bar moots any challenge to the specific findings that triggered application of the bar."  *In re Miller*, No. 14-CV-02707-MSK, 2015 WL 13216407, at *4 (D. Colo. Aug. 7, 2015) (citing *In re Frieouf*, 938 F.2d 1099, 1104 (10th Cir. 1991)).  Thus, it is not necessary for the Court to consider this issue.

## CONCLUSION

For the foregoing reasons, the Court finds no error in the Bankruptcy Court's order of dismissal, dated June 24, 2019.  Therefore, the *Judgment* of the Bankruptcy Court (Case No. 19-20116) is hereby AFFIRMED.

Dated this  28  day of January, 2020.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE

---

[6] Under 11 U.S.C. 109(g), a bankruptcy court is permitted to order a maximum 180-day bar to refiling if it finds that a debtor has: (1) willfully violated a court order; (2) failed to prosecute a case; or (3) voluntarily dismissed the case after a creditor has filed a relief from stay.